**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANTONIA BOWRING, individually and on behalf of all others similarly situated,<br><br>                        Plaintiff,<br><br>            v.<br><br>SAPPORO U.S.A., INC.,<br><br>                        Defendant. | Case No. 16-cv-01858 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SAPPORO U.S.A., INC.'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York  10173
(212) 547-5400

*Attorneys for Defendant Sapporo U.S.A., Inc.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ........................................................................................................... 3

    A.    Sapporo Accurately States on Each Label Where the Beer is Brewed ................ 3

    B.    Plaintiff's Sapporo Beer Purchases ..................................................................... 8

PROCEDURAL HISTORY .............................................................................................. 9

LEGAL STANDARD ..................................................................................................... 9

ARGUMENT ............................................................................................................... 10

I.    PLAINTIFF FAILS TO ALLEGE ANY ACTIONABLE
MISREPRESENTATION ......................................................................................... 10

    A.    Containers of Sapporo Beer Truthfully, Clearly, and Prominently Disclose
The Beer is Brewed in Either Wisconsin or Canada ........................................... 11

    B.    Sapporo's References to Its Japanese Heritage Are Inactionable and No
Reasonable Consumer Would be Misled ........................................................... 15

    C.    Advertising Displays by Third-Party Retailers Are Inactionable ....................... 20

II.    TTB'S APPROVAL OF SAPPORO'S LABELS PROVIDES A SAFE HARBOR
UNDER NYGBL §§ 349 AND 350 ....................................................................... 22

    A.    TTB's History ..................................................................................................... 23

    B.    TTB Actively Polices Misrepresentations on Beer Labels Concerning
Brewing Location ............................................................................................... 24

    C.    TTB Found that Sapporo's Use of "Imported" on Its Labels Is Not
Misleading and Issued COLAs for All Sapporo Beer Labels at Issue ................ 26

III.    PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM ALSO FAILS
BECAUSE PLAINTIFF AND SAPPORO HAVE NO "SPECIAL
RELATIONSHIP" .................................................................................................. 30

IV.    PLAINTIFF'S FRAUD, NEGLIGENT MISREPRESENTATION, AND
UNJUST ENRICHMENT CLAIMS ALSO FAIL UNDER RULE 9(b) ...................... 32

V.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS DUPLICATIVE ...................... 34

VI.    PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF ...................... 35

VII.    PLAINTIFF SHOULD BE DENIED LEAVE TO AMEND .................................... 36

CONCLUSION ........................................................................................................... 37

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
  No. 09-cv-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010)..............................................14

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co. Inc.*,
  404 F.3d 566 (2d Cir. 2005)......................................................................................................32

*Alley Sports Bar, LLC v. SimplexGrinnell, LP*,
  58 F. Supp. 3d 280 (W.D.N.Y. 2014) .......................................................................................31

*Am. Home Prods. Corp. v. Johnson & Johnson*,
  672 F. Supp. 135 (S.D.N.Y. 1987) ...........................................................................................23

*Amalfitano v. NBTY, Inc.*,
  128 A.D.3d 743 (2d Dep't 2015) .........................................................................................11, 12

*Anschutz Corp. v. Merrill Lynch & Co. Inc.*,
  690 F.3d 98 (2d Cir. 2012)........................................................................................................30

*Arnold's Wines, Inc. v. Boyle*,
  571 F.3d 185 (S.D.N.Y. 2009) ..................................................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................................9

*Barbara v. MarineMax, Inc.*,
  No. 12-CV-0368, 2012 WL 6025604 (E.D.N.Y. Dec. 4, 2012) ...............................................34

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................................9

*Cel-Tech Comms. Inc. v. L.A. Cellular Tel. Co.*,
  973 P.2d 527 (Cal. 1999) ......................................................................................................28-29

*Corsello v. Verizon N.Y., Inc.*,
  18 N.Y.3d 777 (2012)................................................................................................................34

*Cruz v. Anheuser-Busch, LLC*,
  No. 14-cv-09670, 2015 WL 3561536 (C.D. Cal. June 3, 2015)................................10, 29, 36

*Cytyc Corp. v. Neuromed. Sys., Inc.*,
  12 F. Supp. 2d 296 (S.D.N.Y. 1998).........................................................................................23

*DeBlasio v. Merrill Lynch & Co. Inc.*,
No. 07-cv-318, 2009 WL 2242605 (S.D.N.Y. July 27, 2009)...............................................31

*Dimuro v. Clinique Labs., LLC*,
572 F. App'x. 27 (2d Cir. 2014) ...................................................................................32, 33

*Dumas v. Diageo PLC*,
No. 15-cv-1681, 2016 WL 1367511 (S.D. Cal. Apr. 6, 2016) ...................................... *passim*

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004)...............................................................................................31

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013).........................................................................................12, 15

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ...............................................................................................12

*Gale v. Int'l Bus. Mach. Corp.*,
781 N.Y.S.2d 45 (2d Dep't 2004).......................................................................................16

*Gomez-Jimenez v. N.Y. Law Sch.*,
956 N.Y.S.2d 54 (1st Dep't 2012) ......................................................................................12

*Harbinger Capital Partners LLC v. Deere & Co.*,
632 F. App'x. 653 (2d Cir. 2015) .......................................................................................30

*Hemphill v. Schott*,
141 F.3d 412 (2d Cir. 1998)...............................................................................................36

*Jovel v. i-Health, Inc.*,
No. 12-cv-5614, 2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) ............................................32

*Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*,
481 F. App'x 622 (2d Cir. 2012) ..................................................................................23, 30

*Levy v. Verizon Info. Servs., Inc.*,
498 F. Supp. 2d 586 (E.D.N.Y. 2007) .................................................................................10

*Lipton v. Nature Co.*,
71 F.3d 464 (2d Cir. 1995)................................................................................................11

*Marty v. Anheuser-Busch Co., LLC*,
43 F. Supp. 3d 1333, 1341 (S.D. Fla. 2014) .......................................................13, 14, 20, 35

*McKinney* v. *Google, Inc.*,
No. 10-cv-01177, 2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) .........................................10

- iii -

*Nowrouzi v. Maker's Mark Distillery, Inc.*,
    No. 14-cv-2885, 2015 WL 4523551 (S.D. Cal. July 27, 2015) .............................................36

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)..................................................................................................................35

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) .................................................................................................................12

*Parent v. MillerCoors LLC*,
    No. 15-cv-1204, 2015 WL 6455752 (S.D. Cal. Oct. 26, 2015).........................................10, 30

*Parent v. MillerCoors LLC*,
    No. 15-cv-1204, 2016 WL 3348818 (S.D. Cal. June 16, 2016) ...........................10, 18, 21, 36

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
    653 F.3d 241 (3d Cir. 2011).................................................................................17, 19, 20

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
    702 F. Supp. 2d 238 (D. Del. 2010) ........................................................................................18

*Piazza's Seafood World, LLC v. Odom*,
    448 F.3d 744 (5th Cir. 2006) ...................................................................................................17

*Porr v. NYNEX Corp.*,
    660 N.Y.S.2d 440 (1997)..........................................................................................................23

*Pungitore v. Barbera*,
    506 F. App'x 40 (2d Cir. 2012) ...............................................................................................35

*Scotch Whiskey Ass'n v. Majestic Distilling Co. Inc.*,
    958 F.2d 594 (4th Cir. 1992) ...................................................................................................17

*Segedie v. Hain Celestial Grp., Inc.*,
    No. 14-cv-5029, 2015 WL 2168374 (S.D.N.Y. May 7, 2015) .................................................31

*Silverman Partners, L.P. v. First Bank*,
    687 F. Supp. 2d 269 (E.D.N.Y. 2010) .....................................................................................32

*Singleton v. Fifth Generation, Inc.*,
    No. 15-cv-474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ............................................28, 29

*Tomasino v. Estee Lauder Cos. Inc.*,
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) .......................................................................................35

*Verzani v. Costco Wholesale Corp.*,
    No. 09-cv-2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010), *aff'd*, 432 F.
    App'x 29 (2d Cir. 2011)............................................................................................................12

**Other Authorities**

19 C.F.R. § 134.11 ...........................................................................................26, 29

27 C.F.R. § 7.22(b)(1)......................................................................................25, 29

27 C.F.R. § 7.24(f)............................................................................................25, 29

27 C.F.R. § 7.25(a)-(b) ................................................................................25-26, 29

27 C.F.R. § 7.29(a)(1).......................................................................................24, 29

27 C.F.R. § 7.54(a)(1)............................................................................................25

27 C.F.R. § 8.54(a)(1)............................................................................................22

27 U.S.C. §§ 201 *et seq.*.................................................................................23, 24

27 U.S.C. § 205...........................................................................................22, 23, 24

Fed. R. Civ. P. 12(b)(6)............................................................................................9

Fed. R. Evid. 201(b)(l)-(2)......................................................................................10

Fed. R. Civ. P. 9(b) ................................................................................................32

N. Y. Alco. Bev. Cont. Law §§ 101, 106(13).........................................................22

N. Y. Gen. Bus. Law §§ 349-50 ....................................................................*passim*

## PRELIMINARY STATEMENT

Sapporo beer was first brewed in Japan in 1876.  At all times relevant to the Complaint, all Sapporo beer sold in the United States by defendant Sapporo U.S.A., Inc. ("Sapporo") has been brewed in either La Crosse, Wisconsin or Guelph, Ontario, Canada.  As required by at least four federal regulations governing the labeling of the brewing location of beer, Sapporo has accurately labeled its beer as either:  (i) brewed in Wisconsin or (ii) brewed in and imported from Canada.  None of Sapporo's labels or packaging uses the word Japan, let alone affirmatively states that Sapporo beer is brewed in or imported from Japan.

In her Amended Complaint ("Am. Compl."), Plaintiff alleges that she purchased Sapporo beer "in reliance on Defendant's representations contained on the packaging and elsewhere that the Beer was imported from Japan."  (Am. Compl. ¶ 39.)  She apparently overlooked or ignored that every label of imported Sapporo beer explicitly states that it is "Brewed and bottled [or canned] by Sapporo Brewing Company, Guelph, Ontario, Canada."  Thus, contrary to Plaintiff's allegations, Sapporo's use of the word "imported" on certain of its labels and Sapporo's statements about where the beer is brewed are completely truthful.

Plaintiff's claims also fail because the Alcohol and Tobacco Tax and Trade Bureau ("TTB") – the arm of the United States Department of Treasury charged with regulating alcohol beverage labeling – reviewed and approved Sapporo's beer labels.  One of TTB's primary purposes is to ensure that, before alcohol beverages go on the market, the labels are not misleading to consumers.  TTB actively polices whether a beer's label makes a geographic misrepresentation, and has promulgated at least four regulations concerning accurate representations of beer origin.  One of those regulations requires a brewer to identify whether the beer is imported and from where.  In approving all of Sapporo's labels, TTB found that Sapporo's labels were not misleading, including as to the brewing location.  Thus, the safe

harbor provisions in New York General Business Law ("NYGBL") §§ 349-50 require dismissal of those claims.

The remainder of the Amended Complaint's allegations accuses Sapporo's marketing and advertising of misleading consumers by paying homage to Sapporo's Japanese heritage and culture.  These statements are inactionable because they are true – Sapporo's heritage is Japanese.  Plaintiff also does not allege that she ever saw the marketing and advertising about which she complains.  In any event, those materials do not reference the beer's brewing location and could not mislead a reasonable consumer.

The Amended Complaint also contains new allegations that unnamed retailers such as "restaurants and food stores" state on menus, displays, or in marketing that Sapporo is imported from Japan.  (Am. Compl. ¶¶ 34-39.)  These allegations are inactionable because Plaintiff does not – because she cannot – allege that a brewer such as Sapporo controls what retailers say about where Sapporo is brewed.

Not only has Plaintiff failed to plead an actionable misrepresentation, but Plaintiff's common law claims for negligent misrepresentation, fraud, and unjust enrichment fail for additional reasons.  Plaintiff fails to state a claim for negligent misrepresentation because she has no "special relationship" with Sapporo.  Each of these claims also sounds in fraud, but Plaintiff fails to plead any of the claims with the requisite specificity under Federal Rule of Civil Procedure ("Rule") 9(b).  One cannot even determine exactly what Sapporo beer she purchases, when or where she purchased Sapporo beer, or how much she paid for the beer.  Plaintiff's unjust enrichment claim is merely an improper "catchall" cause of action.

Finally, because Plaintiff asserts that she will no longer purchase any allegedly misleadingly labeled or marketed Sapporo beer (Am. Compl. ¶ 39), she has only alleged past

- 2 -

injury.  She is not in danger of any imminent future injury.  Thus, even if Plaintiff had a viable

damages claim – which she does not – she has no standing to seek injunctive relief.

　　　　The Complaint should be dismissed in its entirety with prejudice.

**BACKGROUND**

**A.**　　**Sapporo Accurately States on Each Label Where the Beer is Brewed**

　　　　According to Plaintiff's rendition of the "History of Sapporo Beer," the predecessor to

the Sapporo brewery in Japan was established by a Japanese brew master named Seibei

Nakagawa in 1876 on the island of Kaitakushi.  (Am. Compl. ¶ 5.)  Sapporo honors its Japanese

heritage throughout its marketing and advertising.

　　　　Sapporo beer has been sold in the United States since 1964.  (*Id.* ¶ 26.)  At all relevant

times, "all Sapporo Beer sold in the United States [has been] brewed in North America in either

La Crosse, Wisconsin *or* Guelph, Ontario."  (*Id.* ¶ 29) (emphasis added).[1]

　　　　As required by TTB regulations, each Sapporo beer label states clearly where the beer is

brewed.  (Declaration of Andrew B. Kratenstein, dated June 30, 2016 ("Kratenstein Decl."),

Exs. 1-17.)  Labels on Sapporo beers brewed in Canada state:

Imported by SAPPORO U.S.A., INC. New York, NY<br>
Brewed and canned by Sapporo Brewing Company<br>
Guelph, Ontario, Canada<br>
**WWW.SAPPOROBEER.COM**

(*Id*. Exs. 1-10.)  Labels on Sapporo beer brewed in La Crosse, Wisconsin state:

BREWED & CANNED BY SAPPORO BREWING COMPANY,<br>
LA CROSSE, WI FOR SAPPORO U.S.A., NEW YORK, NY<br>
SAPPOROBEER.COM

---

[1] The Amended Complaint (like the original Complaint) skips paragraphs 9-25.

(*Id.* Exs. 11-17.)

For each label shown below – as with all Sapporo beer labels – Sapporo submitted applications to TTB.  (Kratenstein Decl. Exs. 1-17.)  Each label was approved by TTB, including an express approval of the word "imported" for those Sapporo beers brewed in Canada.  (*Id.*)  TTB issued Certifications of Label Approval ("COLA") for each label.  (*Id.*)  The labels in question are as follows, with the statements concerning brewing location in the red box:

**DOMESTIC BEER BOTTLE LABEL**
(Kratenstein Decl. Ex. 12)

## IMPORTED BEER BOTTLE LABEL
(Kratenstein Decl. Ex. 4)



## DOMESTIC BEER CAN LABEL
(Kratenstein Decl. Ex. 11)



## IMPORTED BEER CAN LABEL
(Kratenstein Decl. Ex. 2)



### B.   Plaintiff's Sapporo Beer Purchases

Plaintiff alleges that she purchased Sapporo beer "in reliance on Defendant's representations contained on the packaging and elsewhere that the Beer was imported from Japan." (Am. Compl. ¶ 39.)  Although the Amended Complaint notes that Sapporo produces three beer lines (Sapporo Premium, Sapporo Reserve, and Sapporo Premium Light) and sells each in a variety of sizes (*id.* ¶ 28), Plaintiff does not allege which type of Sapporo beer she purchased or in what sizes.

Plaintiff identifies two "representations" that appear on Sapporo beer containers:  (i) the word "imported" and (ii) the North Star – a "symbol of the pioneers in the area of Sapporo." (Am. Compl. ¶ 29.)  But Plaintiff does not – because she cannot – allege that Sapporo beer labels or packaging say "imported from Japan" or even use the word "Japan."  (*See* Am. Compl. ¶ 39; Kratenstein Decl. Exs. 1-17.)  Assuming the Sapporo beer that Plaintiff purchased was brewed in Canada (and not Wisconsin), Plaintiff apparently ignored or overlooked the following disclosure on the container stating from where the beer was imported:  "BREWED AND BOTTLED [or CANNED] BY SAPPORO BREWING COMPANY, GUELPH, ONTARIO, CANADA." (Kratenstein Decl. Exs. 1-10.)

The Amended Complaint also alleges that Sapporo's "overall marketing campaign" (including on its website and in advertisements, and in particular, its slogan "Sapporo – the Original Japanese Beer," and a single television commercial) created the "illusion" to the reasonable consumer that Sapporo beer is brewed in Japan.  (Am. Compl. ¶¶ 29-33, 39.)  But Plaintiff does not allege she ever saw Sapporo's website, advertisements, or the single television commercial.  She also does not allege that Sapporo is responsible for any advertising or labeling she might have seen in "restaurants or food stores."  (*Id.* ¶ 39.)

- 8 -

## PROCEDURAL HISTORY

Plaintiff filed her original Complaint on April 15, 2016.  (Docket Entry No. 1.)  Sapporo moved to dismiss on June 30, 2016.  (Docket Entry No. 17.)  According to the stipulated briefing schedule, Plaintiff's opposition was to be served on August 3, 2016, with Sapporo's reply due by August 24, 2016 (the day after the initial conference).  Instead of opposing Sapporo's motion to dismiss, on July 21, 2016, Plaintiff filed her Amended Complaint.  (Docket Entry No. 21.)

## LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In order to avoid dismissal, the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its face."  *Id.* at 570.

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the court must accept well-pleaded factual allegations as true, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678-81.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotations and citations omitted).

In deciding a Rule 12(b)(6) motion, "the court may consider documents that are referenced in [the Complaint], documents that plaintiffs relied on in bringing suit (that are either in the plaintiffs' possession or were known to plaintiffs at the time they brought suit), or matters

- 9 -

of which judicial notice may be taken." *Levy v. Verizon Info. Servs., Inc.,* 498 F. Supp. 2d 586, 593 (E.D.N.Y. 2007) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). Here, Sapporo's labeling and advertising are incorporated by reference because they are relied upon in the Complaint and form the basis for Plaintiff's claims.  Likewise, the Court may properly take judicial notice of TTB COLAs, including approved labels, TTB's website pages, Sapporo's trademark approved by the United States Patent and Trademark Office ("USPTO"), and Sapporo's importer and wholesaler licenses and permits.[2]  *See, e.g.*, *Parent v. MillerCoors LLC*, No. 15-cv-1204, 2016 WL 3348818, at *4 (S.D. Cal. June 16, 2016); *Parent v. MillerCoors LLC*, No. 15-cv-1204, 2015 WL 6455752, at *3 (S.D. Cal. Oct. 26, 2015); *Cruz v. Anheuser-Busch, LLC*, No. 14-cv-09670, 2015 WL 3561536, at *1 n.3, *4 n.10 (C.D. Cal. June 3, 2015); *see also* Fed. R. Evid. 201(b)(l)-(2).

## ARGUMENT

## I.    PLAINTIFF FAILS TO ALLEGE ANY ACTIONABLE MISREPRESENTATION

Each of Plaintiff's five claims[3] rests on the same faulty premise:  that Plaintiff and other U.S. consumers of Sapporo beer were misled into believing that the beer is brewed in Japan even though the labels specifically state that the beer is brewed in either La Crosse, Wisconsin or Guelph, Ontario, Canada.  As recently affirmed in another case involving beer labels, "to be actionable as an affirmative misrepresentation, a statement must make a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact."  *Parent*, 2015 WL 6455752, at *8; *see also McKinney* v. *Google, Inc.*, No. 10-cv-

---

[2] Sapporo's Request for Judicial Notice, dated July 28, 2016 ("RJN"), is filed herewith.

[3] Plaintiff asserts claims for:  (i) deceptive business practices under NYGBL § 349; (ii) deceptive advertising under NYGBL § 350; (iii) negligent misrepresentation; (iv) fraud; and (v) unjust enrichment.  Each claim requires Plaintiff to allege an actionable misrepresentation.

01177, 2011 WL 3862120, at *6 (N.D. Cal. Aug. 30, 2011) ("Although misdescriptions of specific or absolute characteristics of a product are actionable, generalized, vague, and unspecified assertions constitute mere puffery upon which a reasonable consumer could not rely.") (internal citations and quotation marks omitted); *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) (holding that subjective product claims not capable of being proved or disproved are nonactionable under the Lanham Act).

Plaintiff alleges that Sapporo "maintains the illusion" that Sapporo beer is imported from Japan in four ways: (i) the use of the word "imported" on Sapporo beer labels; (ii) the use of the North Star trademark on Sapporo beer packaging; (iii) Sapporo's "overall marketing campaign," including use of its slogans "Sapporo is the original Japanese beer" and "Sapporo – the Original Japanese Beer" on the Sapporo website and in advertisements, and a television commercial that "alludes to the Beer being imported with images of a Japanese landscape being traveled into American landscape, finishing with the Beer's slogan;" and (iv) menus, displays, and marketing in unnamed "restaurants and food stores." (Am. Compl. ¶¶ 29-33, 39.)

These allegations fail to state a claim because containers of Sapporo beer are truthfully, clearly, and prominently labeled with the brewing location. The "overall marketing campaign" also truthfully honors Sapporo's Japanese heritage. And Sapporo cannot be held vicariously liable for retailers' actions that Plaintiff does not – and cannot – allege that Sapporo controls.

**A.      Containers of Sapporo Beer Truthfully, Clearly, and Prominently Disclose the Beer is Brewed in Either Wisconsin or Canada**

To avoid dismissal, the representations at issue must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Amalfitano v. NBTY, Inc.*, 128 A.D.3d 743, 745 (2d Dep't 2015) (internal citations and quotations omitted). Whether a consumer is "reasonable" is an objective – rather than a subjective – standard. *Oswego Laborers' Local 214*

- 11 -

*Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) ("the statute surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation").  Courts routinely dismiss cases as a matter of law where the "reasonable consumer acting reasonably under the circumstances" would not be misled.[4]

As the Second Circuit has held, "[a] plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss or, indeed, to escape admonishment."  *Fink*, 714 F.3d at 742.  A court should dismiss claims based in deception where the allegedly deceptive activity or practice is based on truthful statements or are fully disclosed by either the "context" or "the presence of a disclaimer or similar clarifying [or] explanatory language."  *Id.* at 741.

Here, the Amended Complaint alleges that "[m]ost breweries proudly display the location where their products are brewed," while "Sapporo uses the word 'imported' on its labels, misleading consumers to believe that [Sapporo beer] is made in and imported from Japan."[5]

---

[4] *See, e.g.*, *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (affirming dismissal of NYGBL § 349, fraud, good faith, and unjust enrichment claims where the allegedly deceptive language of the advertisement was, in fact, truthful and also contained multiple disclosures and explanatory language); *Verzani v. Costco Wholesale Corp.*, No. 09-cv-2117, 2010 WL 3911499, at *2 (S.D.N.Y. Sept. 28, 2010) ("A reasonable consumer reading the tray's label would not pick out 'shrimp' to the exclusion of all the information on the label (including the product's name and the listed ingredients) when assessing the net weight of the product."), *aff'd*, 432 F. App'x 29 (2d Cir. 2011); *Amalfitano*, 128 A.D.3d at 745 (dismissing NYGBL § 349 claim where explicit disclosures were present in online promotion) (internal citations and quotations omitted); *Gomez-Jimenez v. N.Y. Law Sch.*, 956 N.Y.S.2d 54, 59 (1st Dep't 2012) (noting that "a party does not violate [NYGBL] § 349 by simply publishing truthful information and allowing consumers to make their own assumptions about the nature of the information" and upholding dismissal of NYGBL §349, fraud, and negligent misrepresentation claims where the alleged statements were true); *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (affirming dismissal on motion to dismiss where allegedly deceptive advertisement "expressly and repeatedly state[s] the conditions which must be met in order to win.  None of the qualifying language is hidden or unreadably small.").

[5] After recognizing that Sapporo produces numerous product lines in various sizes at two different brewing locations (Am. Compl. ¶¶ 26, 28, 29), the Complaint then lumps *all* Sapporo products together as "collectively, 'the Beer'" (*id.* ¶ 26).  Plaintiff also does not state which Sapporo product or products she purchased.  (*Id.* ¶ 39.)  Thus, it is

(*See, e.g.*, Am. Compl. ¶¶ 29, 31.)  But not all Sapporo beer labels use the word "imported" and none use the word "Japan."[6]  (*See, e.g.*, Kratenstein Decl. Exs. 1, 11.)  The representations on Sapporo beer labels as to whether and from where the beer is imported are – and always have been – true.

In Sapporo beer brewed in Guelph, Ontario, Canada is, in fact, imported.  The labels specifically state from where and by whom.  On bottles of imported Sapporo beer, the main label on the front states:  (i) directly underneath the Sapporo brand name, "BREWED AND BOTTLED BY SAPPORO BREWING COMPANY, GUELPH, ONTARIO, CANADA," and (ii) directly above the Sapporo brand name, "IMPORTED BY SAPPORO U.S.A., INC. NEW YORK, NY."[7]  (*See, e.g.*, Kratenstein Decl. Ex. 4.)  The disclosures on the bottles are in capital letters and in black font on light backgrounds.  (*Id.*)  The neck label and the back label also say "IMPORTED."  (*Id.*)  Cans of imported Sapporo beer include the same statements as bottles of Sapporo beer, except the statements concerning where the beer was brewed are located on either the side or back of the can and the disclosures on Sapporo Premium and Sapporo Reserve 22 fluid ounce cans are not in all capital letters.  (*See, e.g.*, Kratenstein Decl. Exs. 1-2.)

In *Dumas v. Diageo PLC*, No. 15-cv-1681, 2016 WL 1367511 (S.D. Cal. Apr. 6, 2016), the plaintiffs alleged that the brewer of Red Stripe beer "engaged in unfair and deceptive

---

impossible to determine precisely:  (i) on which representations Plaintiff alleges she relied and (ii) which representations on which containers the Complaint alleges are misrepresentations.  In any event, all of the representations on all Sapporo containers are true.

[6] By contrast, in *Marty v. Anheuser-Busch Co., LLC*, 43 F. Supp. 3d 1333, 1341 (S.D. Fla. 2014), the court denied a motion to dismiss because the external cartons of Beck's – and not the label approved by TTB, which identified the actual brewing location  – explicitly referenced Germany a number of times, even though the beer was brewed in the United States.

[7] By contrast, labels on beer brewed domestically at the Sapporo facility in La Crosse, Wisconsin state "BREWED AND BOTTLED [or CANNED] BY SAPPORO BREWING COMPANY, LA CROSSE, WI FOR SAPPORO U.S.A., NEW YORK, NY."  (*See, e.g.*, Kratenstein Decl. Exs. 11-12.)  The labels on such products do not use the word "imported" because they are not imported.  (*Id.*)

practices by misleading consumers into purchasing and overpaying for Red Stripe beer under the

belief that the beer was produced in Jamaica and imported." *Id.* at *1.  According to the

plaintiffs, Red Stripe packaging:

> was specifically designed in order to maintain the brand identity of Red Stripe as Jamaican beer. . . .  Nowhere on the cardboard packaging of Red Stripe does the label indicate that Red Stripe is brewed in the United States with domestic ingredients.  In fact, the new packaging for Red Stripe boldly states that it is a "Jamaican Style Lager" that contains "The Taste of Jamaica," and the packaging displays the distinctive D&G logo. . . .  The label on the bottles states, "For over 80 years, Red Stripe has embodied the spirit, rhythm and pulse of Jamaica and its people."  The only clue that Red Stripe is no longer a Jamaican beer is that on the border of the new labels, in obscure white text, the bottle says:   "Brewed & Bottled by Red Stripe Beer Company Latrobe, PA."  *Id.*

The court held that "a reasonable consumer would not be misled by the visible packaging

into believing that Red Stripe is brewed in Jamaica with Jamaican ingredients." *Id.* at *3.

Specifically, "on the edge of the label are the words 'Brewed & Bottled by Red Stripe Beer

Company Latrobe, PA.'  Although the words are small, the contrasting white print is legible.  It

is likely that anyone examining the label carefully enough to read the language on the back of the

label would see that the beer is brewed and bottled in Pennsylvania."[8] *Id.* at *5.

---

[8] In seeking to distinguish *Dumas*, Plaintiff will presumably rely on *Marty,* 43 F. Supp. 3d at 1340-41, and *Ackerman v. Coca-Cola Co.*, No. 09-cv-0395, 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010).  Both cases are inapposite.  In *Marty*, the court found that "'the 'Product of USA' disclaimer as printed on the actual cans and bottles themselves is difficult to read.  Depending on the angle from which the viewer looks at the product, the 'Product of USA' disclaimer can be obscured by overhead lighting because the disclaimer is printed in a white font against a shiny metallic silver background. . . .  More importantly, the 'Product of USA' disclaimer is blocked by the carton." *Marty,* 43 F. Supp. 3d at 1340-41.  There are no such allegations here – nor could there be.  The Sapporo disclosures are in black font on light background. (*See, e.g.*, Kratenstein Decl. Ex. 5.)  Plaintiff also makes no allegations that she purchased Sapporo products contained in cartons or that such cartons obscured the disclaimers.  To the contrary, Plaintiff explicitly alleges that she relied on the representations on the Sapporo "packaging". (Am. Compl. ¶ 37.)  In *Ackerman*, which involved the beverage vitaminwater, the court concluded that "[t]he fact that the actual sugar content of vitaminwater was accurately stated in an FDA-mandated label on the [back] of the product [did] not eliminate the possibility that reasonable consumers may be misled" into believing that vitaminwater, the name of the product listed on the front of the bottle, consisted solely of vitamins and water.  2010 WL 2925955, at *16.  Here, by contrast, the use of the word "imported" on the front and back of Sapporo beer labels is objectively true and the disclaimers state precisely from where the beer is imported.

- 14 -

This case should be dismissed for the same reason.  Although Plaintiff attacks Sapporo's use of the word "imported," Sapporo beer labeled as "imported" is, in fact, imported.  Sapporo discloses precisely from where the beer is imported on the labels:  Guelph, Ontario, Canada. Sapporo cannot be liable for Plaintiff's – or any other Sapporo beer buyer's – decision to read selectively a single word on a label which, if read in its entirety, truthfully and prominently discloses where the beer is brewed.  *See Fink*, 714 F.3d at 741.  Accordingly, Plaintiff's claims should be dismissed because the statement that certain Sapporo products are "imported" is true and all Sapporo containers that are imported clearly state that the beer was brewed in Canada – not Japan.  *See Dumas*, 2016 WL 1367511, at *6.

**B.      Sapporo's References to Its Japanese Heritage Are Inactionable and No Reasonable Consumer Would be Misled**

Despite Sapporo's clear and truthful labeling as to where its beer is brewed, Plaintiff alleges that "Sapporo's marketing and advertising *suggests* that the Beer is imported from Japan."  (Am. Compl. ¶ 29) (emphasis added).  According to Plaintiff, consumers are misled by: (i) the North Star trademark on the packaging of Sapporo beer and (ii) Sapporo's "overall marketing campaign online and in advertisements," and in particular, its website, its slogan "Sapporo is the original Japanese beer", and in "product advertisements and commercials". (Am. Compl. ¶¶ 29, 32-33).  These claims fail for several reasons.

*First*, Plaintiff vaguely claims that she was misled by misrepresentations on Sapporo's "packaging and elsewhere."  (Am. Compl. ¶ 39.)  Plaintiff does *not* specifically allege that she saw Sapporo's allegedly misleading advertising – *i.e.*, the website, the slogan (which does not appear on the label or packaging), other non-descript "advertisements," or the single television commercial.  (*Id.* ¶¶ 32-33.)

- 15 -

In *Gale v. International Business Machines Corp.*, 781 N.Y.S.2d 45, 47 (2d Dep't 2004), the court held that, although pleading reliance is not required to state a claim under NYGBL § 349, pleading causation is required:

> Reliance is not an element of a claim under General Business Law § 349. However, the plaintiff must show that the defendant's material deceptive act caused the injury. Here, the plaintiff failed to plead causation with sufficient specificity to withstand dismissal. Although the plaintiff cites particular misleading statements by IBM regarding the reliability of the IBM Deskstar 75GXP, he nowhere states in his complaint that he saw any of these statements before he purchased or came into possession of his hard drive. *If the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury*. *Id.* (internal citations omitted) (emphasis added).

Because Plaintiff does not allege that she saw Sapporo's allegedly misleading advertising, any allegations that such advertising is misleading should be dismissed.[9]

*Second*, there is no deception on Sapporo's packaging. The Amended Complaint alleges that Sapporo's packaging causes consumer confusion because it "uses the North Star, which was initially a symbol of pioneers in the area of Sapporo." (Am. Compl. ¶ 29 (citing the Sapporo website).) But even assuming that reasonable consumers would know that the "North Star" is a symbol of the Sapporo region of Japan – a dubious assumption at best – the North Star is a legally protected and authorized trademark. (Kratenstein Decl. Ex. 21.) A legitimate trademark cannot be the basis of a misrepresentation claim.

As the *Dumas* court explained in response to a similar allegation concerning a logo, it is "doubt[ful]" that the average consumer would know that the D&G logo [on Red Stripe bottles] is

---

[9] The Complaint also alleges that a single "television commercial" – which plaintiff did not see – "alludes to the Beer being imported with images of a Japanese landscape being traveled into American landscape, finishing with the Beer's slogan as 'The Original Japanese Beer.'" (Am. Compl. ¶ 33). The commercial (*available at* https://vimeo.com/48828923) contains no such "allusion." In fact, there is no Japanese-specific landscape in the commercial – just a flight between two unidentified cities. Even if Plaintiff had seen the commercial, it is unclear how this single television commercial could possibly lead a reasonable consumer to believe that Sapporo is brewed in Japan.

- 16 -

associated with Desnoes & Geddes Limited, the Jamaican brewery, as opposed to, say, Diageo-Guinness.  At any rate, continued use of the logo, which has been associated with Red Stripe, is not tantamount to a representation that Desnoes & Geddes brewed the beer."  *Dumas*, 2016 WL 1367511, at *4 n.4.  Accordingly, Plaintiff's allegations concerning the North Star should likewise be dismissed.

*Third*, Plaintiff improperly conflates product "origin" claims with product "heritage" claims.  Unlike the explicit disclosures on Sapporo's labels, Sapporo's use of the "North Star" and its marketing and advertising do not refer to where the beer was brewed.  Rather, they truthfully promote Sapporo's Japanese heritage.

Courts have repeatedly held that true statements about or allusions to a product's heritage cannot serve as the basis of a misrepresentation claim where the product's origin is accurately displayed to consumers.  *See, e.g.*, *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 253 (3d Cir. 2011) (explaining that, even if the words "Havana Club" on bottle of rum could be understood as indicating the product's geographic origin in Havana, Cuba, "those same words cannot mislead a reasonable consumer who is told in no uncertain terms that 'Havana Club' is a brand of rum made in Puerto Rico"); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 753 (5th Cir. 2006) (holding that  use of "Cajun Boy" and "Cajun Delight" trade names on seafood products imported from China was not misleading because the labels listed the products' country of origin); *Scotch Whiskey Ass'n v. Majestic Distilling Co. Inc.*, 958 F.2d 594, 598 (4th Cir. 1992) (holding that use of Scottish infantry regiment name and other Scottish symbols was not misleading where "the labels clearly indicate the products are made in the United States"); *Dumas*, 2016 WL 1367511, at *5 (holding that label stating "'Red Stripe has embodied the spirit, rhythm and pulse of Jamaica and its people' . . .  is a vague, colorful expression of Red

- 17 -

Stripe's association with Jamaica and cannot reasonably be construed as a designation of origin"); *see also Parent*, 2016 WL 3348818, at *6 (holding there were no affirmative misrepresentations where advertisements concerning Blue Moon's production facilities, its original brewmaster, brewery, and recipe, and the year in which the beer was first brewed were all true).

That rule makes perfect sense. If you ask consumers, for example, where they believe Barilla pasta is from, they would likely say Italy; Mercedes automobiles from Germany; and Louis Vuitton purses from France. But that is the wrong question under the consumer protection laws. The right question is: do the products made by those global brands truthfully and accurately disclose where they are, in fact, currently produced? The answer in Sapporo's case is, unquestionably, yes.

The decision in *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 702 F. Supp. 2d 238 (D. Del. 2010), is instructive. Pernod alleged that Bacardi made misleading representations under the Lanham Act concerning the "geographic origin" of its rum branded and sold as "Havana Club." 702 F. Supp. 2d at 240. The court framed the "unique question" as follows: "is 'geographic origin' more akin to 'heritage' or to the 'source of production'? While defendant concentrates on its rum's Cuban history, plaintiff's focus is on defendant's Puerto Rican production site." *Id.* at 248. The court then analyzed, under both alternatives, whether the name "Havana Club" was misleading to consumers. *Id.* at 250.

The court held that "[i]f 'geographical origin' is limited to the source of production or manufacture, plaintiff cannot prevail [because] defendant's bottle accurately states that Havana Club is a 'Puerto Rican Rum' and is 'crafted in Puerto Rico.'" *Id.* It further held that:

> labeling cannot be deceptive as to geographic origin where it contains a truthful disclosure of the product's source, such as "Puerto Rican Rum" or "crafted in

Puerto Rico." Defendant has placed these statements on both sides of its bottle, rather prominently, and following its use of the Havana Club name. *Id.*

The court then rejected the allegation that the "Havana Club" name was misleading as to the rum's "heritage":

[t]he record clearly demonstrates that Havana Club rum has a Cuban heritage and, therefore, depicting such a heritage is not deceptive. . . . The *First Amendment* protects defendant's ability to accurately portray where its rum was historically made – as opposed to claiming that the product is still made there. *Id.* at 251-52.

The court also "disagree[d] with plaintiff that defendant's incorporation of ingredients from other (non-Cuban) geographic areas into its Havana Club rum renders its heritage claim untruthful." *Id.* at 252. The Third Circuit affirmed "the District Court's carefully reasoned opinion. . . . [T]he Havana Club label, taken as a whole, could not mislead any reasonable consumer about where Bacardi's rum is made." *Pernod*, 653 F.3d at 250.

Here, Plaintiff alleges that the North Star is a symbol of the Sapporo pioneers. (Am. Compl. ¶ 29.) Sapporo's slogan – "Sapporo is the original Japanese beer" – likewise honors Sapporo's true Japanese roots, dating back to 1876. (*Id.* ¶ 5.) At the same time, Sapporo accurately discloses its product origin on its labels and does not hide that it is brewed in Wisconsin or Canada. (Kratenstein Decl. Exs. 1-17.)

*Fourth*, and relatedly, a brewer has no heightened duty to counter consumers' incorrect, pre-conceived notions when the production location is fully disclosed. As the *Dumas* court held:

To the extent Plaintiffs complain that representations on the packaging of Red Stripe are not sufficient to alert consumers who already have an understanding and expectation that Red Stripe is brewed in Jamaica that production of the beer has been moved to Pennsylvania, the Court is unaware of any authority supporting the proposition that Defendant would have a heightened duty to counter those pre-conceived notions. Consumers who used to buy Red Stripe when it was made in Jamaica might very well continue to buy the product without bothering to read the packaging or labeling under the assumption that it is still brewed in Jamaica. Plaintiffs have not established that Defendant is under a duty to completely change the packaging or include words such as "DOMESTIC" or

- 19 -

"local ingredients" to alert such consumers of a change. 2016 WL 1367511, at *5.

The facts in this case are even stronger than in *Pernod* and *Dumas*. In those cases, the courts held that no reasonable consumer could be misled by the labels even though the labels explicitly referenced their heritages by using geographic identifiers – Havana and Jamaica, respectively – on their labels. *See Pernod*, 653 F.3d at 250; *Dumas*, 2016 WL 1367511, at *3 ("The mere fact that the word 'Jamaica' and 'Jamaican' appear on the packaging is not sufficient to support a conclusion that consumers would be confused regarding the origin and ingredients of the beer.").[10] Here, by contrast, the Plaintiff does not – because she cannot – allege that Sapporo beer labels say "Japan."

In short, Plaintiff's claims concerning Sapporo's Japanese heritage are not actionable and should be dismissed.

### C. Statements By Third-Party Retailers Are Inactionable

Plaintiff's Amended Complaint contains new allegations that "[a]t restaurants, Sapporo Beer was listed on the imported beer lists or was otherwise displayed as being imported or otherwise from Japan. At food stores, Sapporo Beer was displayed in the imported beer section." (Am. Compl. ¶ 39.) These allegations fail to state a claim against Sapporo. A recent case from the Southern District of California is directly on point.

In *Parent v. Millercoors LLC*, the court considered a suit against another beer brewer – brought pursuant to California's deceptive trade practice and false advertising statutes – premised on the allegation that the brewer's Blue Moon brand was not in fact a "craft beer," as

---

[10] *Marty* is again distinguishable. The phrases "Originated in Germany" and references to Beck's beer being brewed in adherence with "German Purity Law" were on Beck's packaging. The court held that this language could reasonably be understood to mean that the beer came from Germany and was subject to German law. *Marty*, 43 F. Supp. 3d at 1340-42. By contrast, Sapporo's slogan does not appear on Sapporo's packaging nor does the word "Japan" or any statements about the beer being brewed in adherence to Japanese law. (Kratenstein Decl. Exs. 1-17.)

- 20 -

advertised by non-defendant retailers.  *See* 2016 WL 3348818, at *1.  Specifically, the plaintiff alleged, *inter alia*, that the defendant "require[d] that retail establishments stock Blue Moon among the craft beers," and "endorses third-party representations that misidentify Blue Moon as a craft beer."  *Id.* at *7.  The court dismissed the complaint because "[i]n the context of false advertising, there is no duty to investigate the truth of statements made by others."  *Id.* (citations omitted); *see also Dumas*, 2016 WL 1367511, at *4 n.6 (dismissing deceptive practices action against domestic beer manufacturer notwithstanding allegation that menus at retail bars "list Red Stripe as imported beer").

The Amended Complaint does not even go as far as the *Parent* or *Dumas* complaints did. Plaintiff has not alleged that Sapporo was involved in or consulted about (let alone directed) the third-party representations upon which she claims to have relied.  That is fatal to her claim.  *See Cohn v. Kind, LLC*, 13-cv-8365, 2015 WL 9703527, at *3 (S.D.N.Y. Jan. 14, 2015) (dismissing false advertising action against retailers who sold nutrition bars because "[s]imply authorizing the sale of [defendant manufacturer's] bars is not enough to establish vicarious liability").

Even if Plaintiff made such allegations, her claim would still fail.  Alcoholic beverage production and distribution is subject to an extraordinary federal and state regulatory structure.  *See Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185, 187-88 (S.D.N.Y. 2009) (explaining New York's "three-tier" alcohol licensing structure, consisting of retailers, distributors or wholesalers, and producers).  One purpose of this structure is to ensure that retailers (*e.g.*, bars, restaurants, convenience stores, and supermarkets) are strictly independent from manufacturers, importers, and wholesalers.  As a beer importer and wholesaler,[11] Sapporo is generally prohibited by law from dictating or paying for placement of its products at bars, restaurants, grocery stores,

---

[11] *See* Kratenstein Decl. Exs. 22-25.

and other licensed retail outlets.  *See* 27 U.S.C. § 205; 27 C.F.R. § 8.54; N.Y. Alco. Bev. Cont. Law §§ 101, 106(13).  Accordingly, Plaintiff cannot rely on retailers' actions to state a claim against Sapporo.

## II.    TTB'S APPROVAL OF SAPPORO'S LABELS PROVIDES A SAFE HARBOR UNDER NYGBL §§ 349 AND 350

Plaintiff's NYGBL §§ 349 and 350 claims also fail because all Sapporo beer labels were approved by TTB in compliance with federal regulations.  NYGBL §§ 349 and 350 contain safe harbor provisions that exempt from challenge conduct that complies with federal and state rules, regulations, and statutes.  *See* NYGBL § 349(d) ("it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statutes are interpreted by the federal trade commission or such department, division, commission or agency or the federal courts"); NYGBL § 350-d ("it shall be a complete defense that the advertisement is subject to and complies with the rules and regulations of, and the statutes administered by the Federal Trade Commission or any official department, division, commission or agency of the state of New York.").

These safe harbors are a complete defense to Plaintiff's NYGBL §§ 349-50 claims.  *See, e.g.*, *Porr v. NYNEX Corp.*, 660 N.Y.S.2d 440, 448 (1997) ("Moreover, there is no violation of General Business Law § 349 if the challenged conduct is in compliance with the rules and regulations of a *Federal* commission"); *Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App'x 622, 626 (2d Cir. 2012) ("Consequently, as Okoli's complaint alleges that BNB made the proceeds of its check available within the seven-day time frame established by the EFAA and its implementing regulations, it cannot bring a claim against BNB pursuant to § 349"); *Am.*

*Home Prods. Corp. v. Johnson & Johnson*, 672 F. Supp. 135, 145 (S.D.N.Y. 1987) (compliance with FDA regulations created a complete defense to deceptive advertising claim); *Cytyc Corp. v. Neuromed. Sys., Inc*., 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998) (representations were consistent with the FDA's requirements and thus could not violate NYGBL § 349).

**A.      TTB's History**

The Federal Alcohol Administration Act ("FAA Act"), enacted in 1935, 27 U.S.C. §§ 201 *et seq.*, governs the manufacture and sale of alcohol in the United States, including:

- governing the labeling and advertising of alcohol beverages provide adequate information to the consumer concerning the identity and quality of the product;

- requiring alcohol beverage bottlers and importers to have an approved COLA or an exemption certificate before the product may be sold in the United States; and

- preventing misleading labeling or advertising that may result in potential consumer deception regarding the product.   27 U.S.C. §§ 205(e), (f).

Congress provided broad authority to the United States Department of Treasury to promulgate regulations for pre-approval of all malt beverages (*i.e.*, beer) and other alcohol beverage labels:

> The labeling and advertising provisions (sec. 5(e) and (f)) prohibit the use of interstate channels when labeling or advertising of distilled spirits, wine, or malt beverages does not conform to regulations, with the force and effect of law, prescribed by the Administrator.   Definite standards are laid down for these regulations.   Excerpt from H. Rept. 1542, Federal Alcohol Control Bill, 74th Congress in Legislative History of the Federal Alcohol Administration Act, 1935, reprinted by the Federal Alcohol Control Administration, Sept. 15, 1935, p. 66.

Federal regulations governing beer labeling and advertising have been updated numerous times since the repeal of Prohibition.  *See, e.g.*, *Beer – Notices of Proposed Rulemaking* (*available at* https://www.ttb.gov /beer/beer-rulemaking.shtml).  The Treasury Department charged TTB with implementing and enforcing the FAA Act's labeling and advertising provisions.  27 U.S.C. §§ 205(e) and (f); *see also* Kratenstein Decl. Ex. 18, *TTB's Responsibilities – What We Do* (*available at* https://www.ttb.gov/consumer/responsibilities.shtml).

- 23 -

TTB's "strategic mission [is] to provide information to the public as a means of preventing consumer deception."  Kratenstein Decl. Ex. 19, TTB P 5190.3, *What You Should Know About Malted Beverage Labels* (Apr. 2008) (*available at* https://www.ttb.gov/pdf/ brochures/ p51903.pdf).  As TTB has explained, "American adults who enjoy an occasional alcohol beverage of their choice do so without fear that the product they are consuming might not be labeled properly . . . [b]ecause a small Government agency takes pride in assuring that the alcohol beverages sold in the United States are properly described on the container."  *Id.*  To that end, TTB reviews alcohol labels and advertisements in order "to verify that they provide adequate information to the consumer concerning the identity and quality of each alcohol beverage and to make certain that they do not mislead consumers."  *Id.*  This statutorily-required review is done prior to all alcohol beverage labels' introduction into interstate commerce.

### B.   TTB Actively Polices Misrepresentations on Beer Labels Concerning Brewing Location

TTB regulations prohibit misleading alcohol beverage labels:

> Any statement that is false or untrue in any particular, or that, irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, *tends to create a misleading impression*."
> 27 C.F.R. § 7.29(a)(1) (emphasis added).

*See also* 27 C.F.R. § 7.54(a)(1) (prohibiting false and misleading statements in the advertising of beer).  In addition to TTB's overarching prohibition on misleading statements, TTB has issued four regulations concerning representations on a beer's label of geographic origin.

*First*, TTB requires that a TTB officer must specifically and affirmatively find that the label is not misleading as to the product's origin before approving the label:

> *No label shall* contain any brand name, which, standing alone, or in association with other printed or graphic matter, *creates any impression or inference as to the . . . origin . . .* of the product *unless the appropriate TTB officer finds that such* brand name, either when qualified by the word 'brand' or when not so qualified,

- 24 -

*conveys no erroneous impressions as to the . . . origin . . .* of the product.  *Id.*
§ 7.23(b) (emphasis added).

*Second*, in order to minimize consumer confusion, TTB also requires that any beer label

referencing a geographic term that is different from the actual production location of the beer

must also include "in direct conjunction . . . the word 'type' or the word 'American', or *some*

*other statement indicating the true place of production in lettering substantially as conspicuous*

*as such name*."  27 C.F.R. § 7.24(f) (emphasis added).

*Third*, TTB mandates that beer labels include "[o]n the brand label or on a separate label

(back or front):  (i) In the case of imported malt beverages, name and address of importer in

accordance with § 7.25."  27 C.F.R. § 7.22(b)(1) (titled "Mandatory label information").  In turn,

27 C.F.R. § 7.25(b) states:

> On labels of containers of imported malt beverages, *there shall be stated the
> words "imported by," or a singular appropriate phras*e, and immediately
> thereafter the name of the permittee who is the importer, or exclusive agent, or
> sole distributor, or other person responsible for the importation, together with the
> principal place of business in the United States of such person.  In addition there
> may, but need not, be stated unless required by State or foreign law or regulation
> *the name and principal place of business of the foreign manufacturer, bottler,
> packer or shipper*.  27 C.F.R. § 7.25(b) (emphasis added).

By contrast, labels for domestic beers require "the name of the bottler or packer and the place

where bottled or packed [or] [t]he bottler's or packer's principal place of business."  27

C.F.R. § 7.25(a).[12]

*Fourth*, TTB reviews every proposed label to ensure that any imported beer identifies the

"country of origin":

> Pursuant to regulation issued by U.S. Customs and Border Protection, a Country
> of Origin statement is required on containers of imported malt beverages.

---

[12] TTB has also issued guidance with additional instructions, which state:  "If the importer and the bottler or packer
of an imported malt beverage are the same person, the label may show a single name and address preceded by the
phrase 'imported and bottled by,' 'imported and packed by,' or similar phrase."  ATF Procedure 98-1 Sec. 5.01.

> Acceptable statements include . . . . "Brewed in (insert name of country)."
> (Kratenstein Decl. Ex. 20.)

*See also* 19 C.F.R. § 134.11 (titled "Country of origin marking required") ("[E]very article of

foreign origin (or its container) imported into the United States shall be marked in a conspicuous

place as legibly, indelibly, and permanently as the nature of the article (or container) will permit,

in such manner as to indicate to an ultimate purchaser in the United States the English name of

the country of origin of the article.")  Notably, the regulation requires the label to state only the

name of the country from where the beer was brewed.  (*Id.*)  Labels for imported Sapporo beer

include not only the country of origin (Canada), but also the specific city and province (Guelph,

Ontario) where the beer is brewed.  (*See, e.g.*, Kratenstein Decl. Ex. 4.)

### C.    TTB Found that Sapporo's Use of "Imported" on Its Labels Is Not Misleading and Issued COLAs for All Sapporo Beer Labels at Issue

To fulfill its "strategic mission" and consistent with the above regulations, TTB requires

brewers to file an "Application for and Certification/Exemption of Label/Bottle Approval."  (*See,

e.g.*, Kratenstein Decl. Ex. 4.)  On the application, the brewer must provide, among other

information:  (i) a complete and accurate set of labels that the brewer intends to use on the

containers and (ii) identify the "source of the product" as either "domestic" or "imported."  (*Id.*)

Here, for its imported beers, Sapporo submitted applications to TTB with its proposed

labels.  TTB reviewed and approved each label, determined that the labels complied with both

TTB's and Customs' regulations, and issued COLAs.  (Kratenstein Decl. Exs. 1-10.)

Notably, in approving Sapporo's application, TTB was required to complete the "OR"

field on the COLA – which stands for "origin" – with the country from which the beer was

brewed and imported.  (*Id.*) (field labeled "OR" is "FOR TTB USE ONLY").  The only way

TTB could have completed this field for Sapporo was by specifically reviewing the submitted

label to determine where the Sapporo beer was brewed and from where it was imported because no other part of the application provided such information.  (*Id.*)

For example, on November 15, 2011, TTB issued a COLA for 16 fluid ounce Sapporo beer bottles that were brewed at and imported from the Guelph, Ontario, Canada facility. (Kratenstein Decl. Ex. 4.)  The "OR" field states "69," which correlates to Canada.  (*Id*. Ex. 20.)



- 27 -

By contrast, on May 22, 2013, TTB issued a COLA for 20.3 fluid ounce Sapporo beer

bottles that were brewed at the La Crosse, Wisconsin facility.  (Kratenstein Decl. Ex. 14.)  The

"OR" field states "48," which correlates to Wisconsin.  (*Id.* Ex. 20.)



Plaintiff will presumably attempt to rely on *Singleton v. Fifth Generation, Inc.*, No. 15-

cv-474, 2016 WL 406295, at *8 (N.D.N.Y. Jan. 12, 2016), for the proposition that New York's

safe harbor statute is not triggered even though TTB approved Sapporo's labels and issued

COLAs.  *Singleton* is inapposite.

The court held that it was unclear from the record before it "whether TTB *investigated or

ruled upon* the representations that Tito's vodka is 'handmade' and 'crafted in an old-fashioned

pot still.'"  *Id.* (emphasis added).  The court also held that "there is no federal regulation for TTB

to interpret under § 349(d) that defines the terms 'handmade' and 'crafted in an old-fashioned

pot still.'"  *Id.*  Thus, it was "not clear at the motion to dismiss stage that TTB's approval of the

labels was sufficient to apply the safe harbor."  *Id.*

The *Singleton* court distinguished cases in which TTB made determinations as to whether

the use of certain words on a label were accurate.[13]  *Id.*  For example, *Cruz*, 2015 WL 3561536,

---

[13] In holding that the New York safe harbor provision did not apply, the *Singleton* court also relied on the narrow
California and Illinois safe harbor provisions.  The plain language of New York's safe harbor provision makes clear
that the statute has a broader and necessarily more permissive application than the California and Illinois safe harbor
laws.  California and Illinois only permit application of the safe harbor defense where the action is *specifically
authorized* or *clearly permitted* by law or regulation.  *See* 815 Ill. Comp. Stat. Ann. 505/10b(1); *Cel-Tech Comms.*

at *7, involved a defined term ("light" or "lite") used on a beer label.  The *Singleton* court stated that the difference in *Cruz* – where the court held that the safe harbor provision did apply – was that "TTB approved the label in question based on a specific TTB ruling regarding caloric and carbohydrate representations, which set the conditions for using the words 'light' or 'lite' on labels for malt beverages."  *Singleton*, 2016 WL 406295, at *8.  The *Singleton* court also likened *Cruz* to cases in which TTB approved the use of the phrases "Gluten-Free" or "organic" on alcohol beverage labels pursuant to particular definitions assigned by the FDA.  *Id*.

The facts here render *Singleton* inapposite and are even stronger than in *Cruz*.  *Singleton* involved subjective terms – "handmade" and "crafted in an old-fashioned pot still" – that were not at all defined by federal regulation.  The terms in *Cruz* – "light" and "lite"– were, although governed by certain FDA definitions, still potentially subject to interpretation.  By contrast, the terms at issue here – "imported" and the country from which Sapporo beer is imported – are entirely objective and not subject to debate.

TTB actively polices this particular issue to ensure that consumers are not misled as to the geographic origin of beer.  Not only is TTB guided by its general mandate to ensure that labels are not misleading, but TTB must also explicitly find that the brewer has complied with four specific regulations that assure the accurate labeling of a beer's geographic origin, whether it is imported, and precisely from where.  *See* 27 C.F.R. §§ 7.29(a)(1), 7.22(b)(1), 7.24(f), 7.25(b); 19 C.F.R. § 134.11.

TTB approved all of Sapporo's labels in the relevant time period and thus found that Sapporo's labels complied with all the applicable TTB regulations concerning the beer's

---

*Inc. v. L.A. Cellular Tel. Co.,* 973 P.2d 527, 541 (Cal. 1999).  By contrast, the New York safe harbor statute is more broadly worded, and the conduct only has to *comply* with federal rules and regulations.

"origin" and the use of the word "imported" when TTB issued the COLAs.  (Kratenstein Decl.

Exs. 1-17.)  Accordingly, in addition to Sapporo having made no misrepresentations on its

labeling or in its marketing, Plaintiff's NYGBL §§ 349-350 claims should also be dismissed

under the safe harbor provisions.  *See Law Offices of K.C. Okoli, P.C.*, 481 F. App'x at 626;

*Parent*, 2015 WL 6455752, at *6 (holding that safe harbor applied where TTB regulations –

specifically, CFR regulations rather than the COLA approval process – "specifically address

which brewer name is permitted to appear on a beer's label bottle and case or shipping

containers"); *Cruz*, 2015 WL 3561536, at *6 (applying safe harbor to TTB-approved COLAs).

## III.   PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM ALSO FAILS BECAUSE PLAINTIFF AND SAPPORO HAVE NO "SPECIAL RELATIONSHIP"

To state a claim for negligent misrepresentation under New York law, a plaintiff must

allege that:  "(1) the defendant had a duty, as a result of a special relationship, to give correct

information; (2) the defendant made a false representation that he or she should have known was

incorrect; (3) the information supplied in the representation was known by the defendant to be

desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and

(5) the plaintiff reasonably relied on it to his or her detriment."  *Anschutz Corp. v. Merrill Lynch*

*& Co. Inc.*, 690 F.3d 98, 114 (2d Cir. 2012) (internal citations omitted).  Here, even assuming

that there is an actionable misrepresentation – and there is not – Plaintiff's negligent

misrepresentation claim fails because Plaintiff has no "special relationship" with Sapporo.

Under New York law, "[l]iability for negligent misrepresentation has been imposed only

on those persons who possess unique or specialized expertise, or who are in a special position of

confidence and trust with the injured party such that reliance on the negligent misrepresentation

is justified."  *Harbinger Capital Partners LLC v. Deere & Co.*, 632 F. App'x. 653, 657-58 (2d

Cir. 2015) (internal quotations and citations omitted). "[A] special relationship [or position] requires a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified." *Alley Sports Bar, LLC v. SimplexGrinnell, LP*, 58 F. Supp. 3d 280, 293 (W.D.N.Y. 2014) (internal quotations and citations omitted). Thus, "[c]ourts have routinely held that an arms-length commercial transaction, without more, does not give rise to a special duty to speak with care." *Id.* at 293 (internal citations omitted)*.*

Plaintiff does not – because she cannot – allege that she had a special relationship with Sapporo or that Sapporo was a specialized expert in any way. Rather, Plaintiff alleges that she purchased Sapporo beer in (unidentified) garden variety retail transactions based upon certain "representations contained on the packaging and elsewhere" of the beer she purchased. (Am. Compl. ¶ 39.)

Such allegations are insufficient to support a claim for negligent misrepresentation. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004) (affirming dismissal of negligent misrepresentation claim where complaint lacked any allegations of "a special relationship of trust between the parties" or that the relationship "extended beyond a typical arm's length business transaction" because of a particular expertise) (internal quotations omitted); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029, 2015 WL 2168374, at *14 (S.D.N.Y. May 7, 2015) (dismissing negligent misrepresentation claim because "Defendant's obligation to label products truthfully does not arise from any special relationship. There is nothing approximating privity between the parties."); *DeBlasio v. Merrill Lynch & Co. Inc.*, No. 07-cv-318, 2009 WL 2242605, at *33-34 (S.D.N.Y. July 27, 2009) (dismissing negligent misrepresentation claim because statements made on defendants' website and advertisements did not give rise to a special relationship).

- 31 -

## IV. PLAINTIFF'S FRAUD, NEGLIGENT MISREPRESENTATION, AND UNJUST ENRICHMENT CLAIMS ALSO FAIL UNDER RULE 9(b)

Plaintiff's fraud, negligent misrepresentation, and unjust enrichment claims are each subject to Rule 9(b)'s heightened pleading standard.  Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  Likewise, courts have held that the heightened pleading standard under Rule 9(b) applies to claims, if based on the same fraud allegations, for (i) negligent misrepresentation and (ii) unjust enrichment.  *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co. Inc.*, 404 F.3d 566, 583 (2d Cir. 2005) (finding that negligent misrepresentation claims under New York law "must be pled in accordance with the specificity criteria of Rule 9(b)"); *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010) (holding that Rule 9(b) applies to unjust enrichment claim where it was premised on allegations of fraud).

Here, all of Plaintiff's claims arise from alleged misrepresentations and omissions made by Sapporo with knowledge of their purported falsehood.  (*See* Am. Compl. ¶¶ 53-54, 65, 76, 80, 86.)  Thus, Plaintiff's fraud, negligent misrepresentation, and unjust enrichment claims are subject to Rule 9(b)'s heightened pleading standard.

To satisfy Rule 9(b), a complaint must:  "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Dimuro v. Clinique Labs., LLC*, 572 F. App'x. 27, 30 (2d Cir. 2014) (internal citations and quotations omitted); *see also Jovel v. i-Health, Inc.*, No. 12-cv-5614, 2013 WL 5437065, at *11 (E.D.N.Y. Sept. 27, 2013) ("Rule 9(b) generally requires that a plaintiff specify the who, what, where, when[,] and why of the alleged fraud").  Indeed, "[o]ne of the cardinal purposes of Rule 9(b) is to provid[e] a

- 32 -

defendant fair notice of plaintiff's claim, to enable preparation of [a] defense." *Dimuro*, 572 F.

App'x. at 30.

In *Dimuro*, the Second Circuit upheld the dismissal of consumer fraud and unjust

enrichment claims where the allegations underlying those claims were "wholly conclusory." *Id*.

The Second Circuit held that:

> the complaint does not allege which particular advertising claims each of the
> named Plaintiffs relied on when purchasing the product, so the conclusion that
> they did not receive what they bargained for has no ascertainable meaning. From
> the allegations in the complaint we do not know: (1) if Plaintiffs used the
> products they purchased; (2) if Plaintiffs used the products as directed; (3) what
> specific benefits Plaintiffs expected to receive from the products based on false
> advertising claims and; (4) what benefits Plaintiffs hoped for but did not receive.
> *Id*.

Plaintiff's conclusory allegations similarly lack any specificity about her purchase(s) of

Sapporo. In a single paragraph, titled "Plaintiff's Experiences," Plaintiff alleges:

> At all relevant times, Plaintiff resided in, and continues to reside in, New York,
> New York. On several occasions during the Class Period, including, but not
> limited to, June-August of 2013; February, April, July and September-November
> of 2014; and, January, March and November of 2015, Plaintiff purchased Sapporo
> Beer at multiple locations in restaurants and food stores located in New York
> City. At restaurants, Sapporo Beer was listed on the imported beer lists or was
> otherwise displayed as being imported or otherwise from Japan. At food stores,
> Sapporo Beer was displayed in the imported beer section. Plaintiff purchased
> Sapporo Beer in reliance on Defendant's representations contained on the
> packaging and elsewhere that the Beer was imported from Japan. Plaintiff has
> since learned that Sapporo Beer is not imported from Japan, but rather made in
> North America. Plaintiff would not have purchased Sapporo Beer had she known
> that the Defendant's representations were false. Because of Defendant's
> misrepresentations and deceptive conduct, Plaintiff purchased Beer that had less
> value than what Plaintiff paid, and Plaintiff has accordingly suffered legally
> cognizable damages proximately caused by Defendant's misconduct. After
> learning the truth about Defendant's mislabeling of Sapporo Beer, Plaintiff
> decided to stop purchasing it. If the Products were accurately labeled, Plaintiff
> would continue purchasing them. (Am. Compl. ¶ 39.)

Plaintiff subsequently restates these allegations in section titled "Rule 9(b) Allegations," in a

clear attempt to overcome the deficiency in her original pleading. (*Id.* ¶¶ 44-49.)

- 33 -

Merely reiterating allegations – even under the labels "who, what, where, when and why" – is not sufficient. *See Barbara v. MarineMax, Inc.*, No. 12-CV-0368, 2012 WL 6025604, at *3 (E.D.N.Y. Dec. 4, 2012) ("[M]ere general allegations that there was fraud . . . or characterizations of acts or conduct in these terms are not enough [to survive a Rule 9(b) motion] no matter how frequently repeated.") (citation omitted). Plaintiff's sparse allegations beg the following questions:  precisely when did she purchase Sapporo beer; from what specific vendors did she purchase Sapporo beer; how many times did she purchase Sapporo beer; how much did she purchase each time; which type of Sapporo beer did she purchase (premium, reserve, or light; can, bottle, or draft); how much did she pay for Sapporo beer and was it the same amount each time; when did she learn Sapporo beer was not imported from Japan; on which representation(s) on the packaging "and elsewhere" did she rely; how much less would Plaintiff had paid for Sapporo beer had she understood it was not brewed in Japan?  Accordingly, Plaintiff's fraud, negligent misrepresentation, and unjust enrichment claims should be dismissed for the independent reason that the Complaint lacks the specificity required under Rule 9(b).

## V.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS DUPLICATIVE

Under New York law, "unjust enrichment is not a catchall cause of action to be used when others fail.  It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).  In other words, "[a]n unjust enrichment claim is not available where it *simply duplicates, or replaces*, a conventional contract or tort claim."  *Id.* (emphasis added).

For example, in *Corsello*, the New York Court of Appeals upheld dismissal of an unjust enrichment claim that was based on the same allegation as the plaintiffs' trespassing claim:

- 34 -

plaintiffs allege that Verizon committed actionable wrongs, by trespassing on or taking their property, and by deceiving them into thinking they were not entitled to compensation.  To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, *an unjust enrichment claim cannot remedy the defects*.  *Id.* at 791 (emphasis added).

The same is true here.  Plaintiff admits that she is claiming unjust enrichment "in the alternative" to her other claims.  (Am. Compl., Fifth Cause of Action at 19.)  Plaintiff's unjust enrichment claim is duplicative and should be dismissed for this additional reason.

## VI.   PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF

In addition to monetary damages, Plaintiff also seeks injunctive relief.  (Am. Compl., Prayer for Relief at 21.)  "[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future or continuing* harm."  *Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  Moreover, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."  *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Plaintiff admits she already stopped buying Sapporo beer – after she supposedly learned that it was brewed in North America.  (Am. Compl. ¶ 39.)  Accordingly, there is no threat of future injury to Plaintiff and she thus lacks standing to seek an injunction.  *See Marty*, 43 F. Supp. 3d at 1359 (dismissing claim for injunctive relief and holding plaintiff had only identified allegations of past injury where he alleged he would not purchase Beck's beer as currently labeled in the future); *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 158 (E.D.N.Y. 2015) (dismissing claim for injunctive relief where "Plaintiff does not allege that he intends to purchase the 1 Day Diet again in the future, nor is he suffering any ongoing injury as a result of his past purchases of 1 Day Diet"); *Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014) (finding that plaintiff, who alleged she "remain[ed] a potential . . . customer and

- 35 -

[wa]s likely to be misled again," failed to allege "a sufficient future injury to establish standing to assert her claims for injunctive relief because she has demonstrated that she is, in fact, unlikely to purchase [the product at issue in the litigation] again.").

## VII.   PLAINTIFF SHOULD BE DENIED LEAVE TO AMEND

No amendment can cure the Complaint's deficiencies.  The Court may deny leave to amend when any proposed amendment would be futile.  *See, e.g.*, *Hemphill v. Schott*, 141 F.3d 412, 420 (2d Cir. 1998) (holding that a court may exercise its discretion to deny a party's motion to amend a pleading for undue delay, bad faith, undue prejudice, or when the proposed amendment would be futile) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Cruz*, 2015 WL 3561536, at *10 (denying leave to amend where "[i]t is evident from not only Plaintiffs' own allegations [regarding alleged misrepresentations by Bud Light Lime-A-Rita] but also from the foregoing analysis that Plaintiffs cannot overcome the deficiencies in their complaint"); *Nowrouzi v. Maker's Mark Distillery, Inc.*, No. 14-cv-2885, 2015 WL 4523551, at *7-8 (S.D. Cal. July 27, 2015) (dismissing false advertising and misrepresentation claims with prejudice where no reasonable consumer would be confused).

Here, no reasonable consumer can ignore the statements on Sapporo's labels, which state where the beer is brewed.  Nor can a reasonable consumer rely on marketing that honors Sapporo's true Japanese heritage.  Plaintiff also cannot overcome Sapporo's compliance with TTB regulations, which qualifies Sapporo for safe harbor protection.  These legal deficiencies cannot be cured.  Indeed, Plaintiff has already amended her Complaint once.  She does not deserve a third bite at the apple.  *See Parent*, 2016 WL 3348818, at *8 (dismissing complaint and denying leave to amend in part because plaintiff has already amended).  The Court should dismiss the Amended Complaint with prejudice.

- 36 -

**CONCLUSION**

Plaintiff claims that she was misled by Sapporo's packaging into believing that its beer is imported from Japan. Had she read the TTB-approved label, which explicitly states where Sapporo beer is brewed, neither she nor any reasonable consumer could have been misled. The NYGBL safe harbors also apply. Sapporo's truthful allusions to its Japanese heritage in Sapporo's marketing and advertising – most of which Plaintiff does not even allege she saw – are likewise not actionable, nor are the allegations involving actions of third-party retailers. Plaintiff's common law claims also fail for a variety of independent reasons. The Amended Complaint should be dismissed with prejudice.

Dated:  New York, New York
         July 28, 2016

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

By:____/s/ Andrew B. Kratenstein_____
       Andrew B. Kratenstein
       David H. Chen
       M. Elias Berman
       340 Madison Avenue
       New York, New York 10173
       (212) 547-5400

       *Attorneys for Defendant Sapporo U.S.A., Inc.*

Of counsel:

Marc Sorini (admitted *pro hac vice*)
500 North Capitol St NW
Washington, DC 20001
(202) 756-8000