**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

- and -

**HALUNEN LAW**
Clayton Halunen
*halunen@halunenlaw.com*
Melissa W. Wolchansky
*wolchansky@halunenlaw.com*
Amy E. Boyle
*boyle@halunenlaw.com*
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*Counsel for Plaintiff and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTONIA BOWRING, *individually and on behalf of all others similarly situated*,<br><br>    Plaintiff,<br><br>    v.<br><br>SAPPORO U.S.A., INC.,<br><br>    Defendant. | Case No. 1:16-cv-01858-ILG-SMG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT SAPPORO U.S.A., INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 4

LEGAL STANDARD ........................................................................................................... 6

LEGAL ARGUMENT .......................................................................................................... 9

I.      PLAINTIFF SUFFICIENTLY ALLEGES ACTIONABLE
        MISREPRESENTATIONS. ....................................................................................... 9

        A.      The complaint sufficiently alleges violations of New York's consumer
                protection law, New York General Business Law sections 349 and 350. .............. 9

        B.      The complaint is replete with allegations of representations and omissions
                by Sapporo that have the capacity to deceive reasonable consumers. .................. 10

        C.      Sapporo's packaging and advertising have the capacity to deceive
                reasonable consumers, and its purported disclosures relative to brewing
                location, set forth in a small print disclaimer, are not sufficient to
                overcome its prominent front label misrepresentations and other deceptive
                marketing. ........................................................................................................ 12

II.     NO SAFE HARBOR PROTECTS SAPPORO BEER'S FALSE AND
        MISLEADING LABELING AND ADVERTISING. ....................................................... 17

III.    THE AMENDED COMPLAINT ALLEGES A SPECIAL RELATIONSHIP
        SUFFICIENT TO SUPPORT A CLAIM FOR NEGLIGENT
        MISREPRESENTATION ........................................................................................... 25

IV.     THE AMENDED COMPLAINT SATISFIES THE HEIGHTENED PLEADING
        STANDARD OF RULE 9(b) OF THE FEDERAL RULES OF CIVIL
        PROCEDURE ........................................................................................................... 27

V.      PLAINTIFF MAY PLEAD UNJUST ENRICHMENT IN THE ALTERNATIVE. ........ 30

VI.     PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF. .............................. 30

VII.    IF THE COURT GRANTS ANY PORTION FO DEFENDANT'S MOTION TO
        DISMISS, IT SHOULD ALLOW PLAINTIFF LEAVE TO AMEND. ............................ 31

CONCLUSION .................................................................................................................... 32

i

## TABLE OF AUTHORITIES

**CASES**

*Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML,
2013 WL 7044866 (E.D.N.Y. July 18, 2013) ........................................................ 31

*Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG),
2010 WL 2925955 (E.D.N.Y. July 21, 2010) ................................................ passim

*Aliano v. Louisville Distilling Co., LLC*,
115 F. Supp. 3d 921 (N.D. Ill. 2015) .................................................................. 19

*Am. Home Prods. Corp. v. Johnson & Johnson*,
577 F.2d 160 (2d Cir. 1978) .............................................................................. 11

*American Home Products Corp. v. Johnson & Johnson*,
672 F. Supp. 135 (S.D.N.Y. 1987) ..................................................................... 25

*Amusement Indus., Inc. v. Stern*,
786 F. Supp. 2d 758 (S.D.N.Y. 2011) ................................................................ 12

*Anwar v. Fairfield Greenwich, Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010) ................................................................ 26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 7, 8

*Barapind v. Reno*,
72 F. Supp. 1132 (E.D. Cal. 1999) ....................................................................... 7

*Barbara v. MarineMax, Inc.*, No. 12-CV-0368 ARR,
2012 WL 6025604 (E.D.N.Y. Dec. 4, 2012) ...................................................... 29

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................... 7, 8, 13

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*,
133 F. Supp. 2d 162 (E.D.N.Y. 2001) ............................................................... 18

*Boule v. Hutton*,
328 F.3d 84 (2d Cir. 2003) .................................................................................. 9

*Burton v. Iyogi, Inc.*, No. 13-CV-6926 DAB,
2015 WL 4385665 (S.D.N.Y. Mar. 16, 2015) ................................................... 30

*Cruz v. Anheuser-Busch, LLC*, No. CV 14-09670 AB ASX,
2015 WL 3561536 (C.D. Cal. June 3, 2015) ..................................................... 24

*Curtis & Assoc. v. Law Offices of David M. Bushman*,
   758 F. Supp. 2d 153 (E.D.N.Y. 2010) ..................................................................... 7

*Cytyc Corp. v. Neuromedical Sys., Inc.*,
   12 F. Supp. 2d 296 (S.D.N.Y. 1998) ...................................................................... 25

*Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 NGG RML,
   2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) ................................................. 14, 30

*DiMuro v. Clinique Labs., LLC*,
   572 F. App'x 27 (2d Cir. 2014) .............................................................................. 29

*Eliya, Inc. v. Steven Madden, Ltd.*, No. 15CV1272DRHSIL,
   2016 WL 1092626 (E.D.N.Y. Mar. 21, 2016) ........................................................ 32

*Foman v. Davis*,
   371 U.S. 178 (1962) ............................................................................................... 31

*Freudenberg v. E*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010) ...................................................................... 7

*Gauquie v. Albany Molecular Research, Inc.*, No. 14CV6637FBSMG,
   2016 WL 4007591 (E.D.N.Y. July 26, 2016) .......................................................... 27

*Global Network Communs., Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006) ................................................................................ 6, 7

*Goldman v. Belden*,
   754 F.2d 1059 (2d Cir. 1985) .................................................................................. 8

*Hitchins v. NYC Dep't of Educ.*, No. 11-CV-4180 RRM RML,
   2013 WL 1290981 (E.D.N.Y. Mar. 28, 2013) .......................................................... 7

*Hofmann v. Fifth Generation, Inc.*, No. 14-CV-2569 JM JLB,
   2015 WL 5440330 (S.D. Cal. Mar. 18, 2015) .............................................. 19, 20, 22

*Holk v. Snapple Beverage Corp.*,
   575 F.3d 329 (3d Cir. 2009) ............................................................................ 21, 24

*Holmes v. Air Line Pilots Ass'n*,
   745 F. Supp. 2d 176 (E.D.N.Y. 2010) ...................................................................... 8

*Huang v. iTV Media, Inc.*,
   13 F. Supp. 3d 246 (E.D.N.Y. 2014) ...................................................................... 30

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM,
   2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ............................................. 2, 3, 18, 22

*Joinnides v. Floral Park-Bellerose Union Sch. Dist.*, No. CV 12-5682 JS AKT,

2015 WL 1476422 (E.D.N.Y. Mar. 31, 2015) ........................................................ 32

*Jovel v. i-Health, Inc.*, No. 12-CV-5614 JG,
    2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) .............................................. 29, 30

*Kimmel v. Schaefer*,
    675 N.E.2d 450 (N.Y. 1996) ..................................................................... 25

*Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI,
    2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ............................................... 31

*Larsen v. Trader Joe's Co.*, No. C 11-05188 SI,
    2012 WL 5458396 (N.D. Cal. June 14, 2012) ............................................... 31

*Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*,
    481 F. App'x 622 (2d Cir. 2012) ................................................................ 25

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) ................................................................. 27, 32

*Marty v. Anheuser-Busch Cos., LLC*,
    43 F. Supp. 3d 1333 (S.D. Fla. 2014) ................................................... passim

*Maurizio v. Goldsmith*,
    230 F.3d 518 (2d Cir. 2000) ..................................................................... 10

*McDonald v. North Shore Yacht Sales, Inc.*,
    513 N.Y.S.2d 590 (Sup. Ct. 1987) .............................................................. 10

*Mennen Co. v. Gillette Co.*,
    565 F. Supp. 648 (S.D.N.Y. 1983) ............................................................. 10

*Municipality of Bremanger v. Citigroup Glob. Markets Inc.*, No. 09 CIV. 7058 VM,
    2013 WL 1294615 (S.D.N.Y. Mar. 28, 2013) .............................................. 12

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    647 N.E.2d 741 (N.Y. 1995) ............................................................ 10, 11, 22

*Oxman v. Amoroso*,
    659 N.Y.S.2d 963 (N.Y. City Ct. 1997) ........................................................ 9

*Parent v. MillerCoors LLC*, No. 3:15-CV-1204-GPC-WVG,
    2015 WL 6455752 (S.D. Cal. Oct. 26, 2015) ................................................ 25

*Paulino v. Conopco, Inc.*, No. 14-CV-5145 JG RML,
    2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) .......................................... 27, 28

*Penrod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
    653 F.3d 241 (4th Cir. 2011) ..................................................................... 14

*People ex rel. Spitzer v. Gen. Elec. Co.*,
　　302 A.D.2d 314 (N.Y. App. Div. 2003) ........................................................... 9, 15

*People ex rel. Spitzer v. Gen. Elec. Co.*,
　　756 N.Y.S.2d 520 (App. Div. 2003) ................................................................ 18

*People v. Coalition Against Breast Cancer, Inc.*,
　　975 N.Y.S.2d 712 (Sup. Ct. 2013) ................................................................. 10

*Porr v. NYNEX Corp.*,
　　660 N.Y.S.2d 440 (1997) ................................................................................ 25

*S. Pac. Shipping Co. Inc. v. Redi-Fresh Produce Inc.*, No. 14 CIV. 4157 LAK AJP,
　　2014 WL 6968039 (S.D.N.Y. Dec. 9, 2014) .................................................. 8

*Scheuer v. Rhodes*,
　　416 U.S. 232 (1974) ........................................................................................ 8

*Sclafani v. Barilla Am., Inc.*,
　　796 N.Y.S.2d 548 (2005) ................................................................................ 18

*Singleton v. Fifth Generation, Inc.*, No. 515CV474BKSTWD,
　　2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) .......................................... passim

*Streit v. Bushnell*,
　　424 F. Supp. 2d 633 (S.D.N.Y. 2006) ............................................................ 7

*Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*,
　　250 F.3d 87 (2d Cir. 2001) ............................................................................. 25

*Turtur v. Rothschild Registry Int'l*,
　　26 F.3d 304 (2d Cir. 1994) ............................................................................. 12

*United States ex rel. Forcier v. Computer Scis. Corp.*, No. 12-CV-1750 (DAB),
　　2016 WL 2605896 (S.D.N.Y. Apr. 28, 2016) ................................................ 27

*Vallery v. Bermuda Star Line, Inc.*,
　　532 N.Y.S.2d 965 (Civ. Ct. 1988) .................................................................. 10

*Von Koenig v. Snapple Beverage Corp.*,
　　713 F. Supp. 2d 1066 (E.D. Cal. 2010) .................................................... 21, 24

*Welk v. Beam Suntory Imp. Co.*,
　　124 F. Supp. 3d 1039 (S.D. Cal. 2015) .......................................................... 19

*Williams v. Gerber Prods. Co.*,
　　552 F.3d 934 (9th Cir. 2008) ........................................................ 7, 10, 15, 17

*Winick Realty Grp. LLC v. Austin & Associates*,

857 N.Y.S.2d 114 (App. Div. 2008) ................................................................ 30

## STATUTES, REGULATIONS, AND OTHER AUTHORITIES

19 C.F.R. § 134.11 ........................................................................................ 24

27 C.F.R. § 7.22 ........................................................................................... 23

27 C.F.R. § 7.24 .................................................................................. 3, 18, 24

27 C.F.R. § 7.25 ........................................................................................... 23

27 C.F.R. § 7.29 ........................................................................................... 20

27 C.F.R. § 7.54 ........................................................................................... 20

27 U.S.C. § 205 ................................................................................. 19, 20, 21

FED. ALCOHOL CONTROL ADMIN., *Legislative History of the Federal Alcohol Administration Act (Public No. 401, Seventy-Fourth Congress) (H.R. 8870)* (1935) ............ 20

Federal Alcohol Administration Act, 27 U.S.C. § 201 *et seq.* ............................... 20, 21

Federal Rule of Civil Procedure 8 ..................................................................... 30

Federal Rule of Civil Procedure 9 ............................................................... passim

Federal Rule of Civil Procedure 12 .................................................... 6, 7, 13, 16

Federal Rule of Civil Procedure 15 ............................................................. 31, 32

New York General Business Law section 349 ................................................. passim

New York General Business Law section 350 ................................................. passim

New York General Business Law section 350-d ........................................ 17, 18, 21

Plaintiff Antonia Bowring ("Bowring" or "Plaintiff") respectfully submits this memorandum of law in opposition to the motion by Defendant Sapporo U.S.A., Inc. ("Sapporo" or "Defendant") to dismiss her Amended Complaint. (*See* Notice Def.'s Mot. Dismiss Am. Compl., ECF No. 22; Mem. Supp. Def.'s Mot. Dismiss Am. Compl., ECF No. 23 ("Mem.").)

For the reasons below, the motion is meritless, and the Court should deny it in its entirety.

## <u>INTRODUCTION</u>

Sapporo is the one of the largest cities in Japan, with a population of about two million people. Sapporo is world famous for a number of reasons, including being the host of the Winter Olympics, a G8 Summit, and the World Cup of soccer. Sapporo, Japan, is also famous for being the home of Sapporo Breweries—a place where beer has been brewed and from which beer has been distributed to locations throughout Japan and the rest of the world under the "SAPPORO" label for more than one hundred years.

Locations, that is, except for the United States. Unbeknownst to consumers, Sapporo beer sold in the United States is not from the city of Sapporo, Japan. Nor is it even from Japan. Rather, and despite having a label bearing the very name of the major Japanese city which supplies Sapporo beer to the rest of the world, the Sapporo beer sold in the United States is from either Guelph, Canada, or La Crosse, Wisconsin.

Plaintiff does not dispute that if the beer were called "GUELPH" or "LA CROSSE," its labeling would not be misleading. However, if that were the case, Defendant would not also be able to charge a premium price for the beer that overseas products command, as it does with the its "SAPPORO" beer. Because the beer is not called "GUELPH" or "LA CROSSE"—and is, instead, called "SAPPORO"—the very name of the beer is misleading, as consumers associate the term "SAPPORO" with Japan, and Defendant charges them more money on account of the positive

associations they have with beer brewed in Japan..

Despite these facts, Defendant has moved to dismiss. Defendant's first argument boils down to it asking this Court to ignore the pleadings and rule as a matter of law that no reasonable consumer could be misled by a beer named after a city in a foreign country into believing the beer is, in fact, imported from that foreign country. Courts have repeatedly held, however, that such arguments should be rejected because they raise factual disputes and, therefore, are not appropriate for determination on a motion to dismiss. *See, e.g.*, *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *15 (E.D.N.Y. Aug. 29, 2013) ("*Frito-Lay*") ("'***The question whether a reasonable consumer would likely be deceived . . . is a factual dispute.' Therefore, it is generally not resolved on a motion to dismiss***." (citation omitted)).

Second, Defendant argues that it disclaims any notion that the product is from Japan. This argument fails for two reasons. Courts have rejected the argument that small print on the back of the label can disclaim misrepresentations on the front. *See, e.g.*, *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010) ("Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."). Furthermore, even if the so-called disclaimer were considered here, which it should not be (as no consumer considered it), the disclaimer does not say the beer was brewed in Guelph, Canada, or La Crosse, Wisconsin. Rather, it indicates that companies based in those cities (as well as other cities) had a role in the importation or distribution of the product.  Indeed, this would be true even if the product was from Japan (which it is not).

Finally, Defendant argues the New York consumer protection law's safe harbors shield Defendant from Plaintiff's New York consumer protection claims. This, too, is wrong and has

been rejected by courts in similar cases based upon misleading origin-of-product representations involving some of Defendant's competitors' beers. *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1336 (S.D. Fla. 2014) (rejecting safe harbor argument where plaintiff alleged consumers believed "Beck's" beer was from Germany, when, in fact, it was brewed in St. Louis, Missouri); *see also Frito-Lay*, 2013 WL 4647512, at *22 ("Compliance with regulations does not immunize misconduct outside the regulatory scope."). Indeed, Defendant's labeling violates the very regulations it tries to hide behind, as they require any geographical name on a beer's label (such as "SAPPORO") to represent accurately the location of production of the beer. 27 C.F.R. § 7.24(f) (***prohibiting geographic names on beer labeling when the beer is not produced in the geographic region indicated by the name, unless the labeling includes "in direct conjunction with the name . . . the word 'type' or the word 'American', or some other statement indicating the true place of production in lettering substantially as conspicuous as such name***").  Indeed, as recently noted, the safe harbor argument made by Defendant here has never been successful with respect to a New York consumer protection claim under § 349.  *Singleton v. Fifth Generation, Inc.*, No. 515CV474BKSTWD, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) (denying motion to dismiss, stating that ***"the safe harbor provision in N.Y. G.B.L. § 349(d) has not been applied in the context of TTB label approval.***")

Defendant's remaining arguments regarding Plaintiff's negligent misrepresentation claim, the application of Federal Rule of Civil Procedure 9(b), Plaintiff's unjust enrichment claim, her standing to seek injunctive relief, and whether the court should grant leave to amend are similarly misplaced, as detailed below.

For all these reasons, Defendant's motion to dismiss must be denied.

## STATEMENT OF FACTS

Nearly 150 years ago, starting in 1869, a beer factory based in Sapporo, Japan, began brewing a product labeled after its place of origin—Sapporo beer. (Am. Compl. ¶ 5, ECF No. 21.)

In 1964, Sapporo was first imported to the United States from Sapporo, Japan. (*Id.* at ¶ 8.) Consumers in the United States continue to believe today that Sapporo is imported from Japan.

However, Sapporo beer sold in the United States is no longer from the city of Sapporo or even from Japan. Rather, so-called "SAPPORO" beer is now from either La Crosse, Wisconsin, or Guelph, Canada. (Am. Compl. ¶¶ 28–29.) To continue to charge consumers the premium price that overseas imported beers command, Defendant wants consumers to believe otherwise and think the beer still comes from Japan.

To that end, Sapporo has implemented a pervasive marketing, advertising, and labeling strategy that is designed to, and in fact does, deceive consumers into believing its beer is still brewed exclusively in Japan, as it had been for the first century of its existence. (*Id.* at ¶¶ 29–33.) Sapporo essentially concedes this deception in its brief, acknowledging that it "honors its Japanese heritage throughout its marketing and advertising." (Mem. 3.)

Illustrative examples of Sapporo's efforts to mislead the consuming public about the true origins of its brews include the fact that it touts itself on its website and in its advertisements as being "the original Japanese beer," as being "the oldest brand of beer in Japan," and as "stand[ing] alone as the #1 selling Asian Beer in the United States." (*See* Am. Compl. ¶¶ 32–33.) Additionally, the labeling of imported Sapporo beer prominently features the word "IMPORTED," placed front and center on the packaging in relatively close proximity to the well-known Japanese city for which the beer is named, as the following image illustrates:



(*Id.* at ¶ 29.)

While Defendant claims its imported beers do include a notation indicating they are actually imported from Canada (and not Japan), it concedes, or at least cannot dispute, that this disclosure appears in very small font, often on the back or side of the packaging. (*See, e.g.*, Exs. 1–2, Decl. Kratenstein Supp. Def.'s Mot. Dismiss Am. Compl., ECF Nos. 24-1, 24-2 ("Decl. Kratenstein") (imported beer can labels).) And Sapporo is similarly surreptitious with respect to informing consumers as to the true origins of the beers it brews domestically, using labeling that likewise includes only a small disclaimer, which is often located "on either the side or back of the can." (*See* Mem. 13; *see, e.g.*, Ex. 11, Decl. Kratenstein, ECF No. 24-11 (domestic beer can label).)

Compounding the confusion is the fact that in addition to naming its beer after one of Japan's oldest, largest, and most recognizable cities (the name of which appears prominently on each container), Sapporo also makes liberal use of Japanese emblems and imagery in its packaging and advertising. Indeed, it has emblazoned each can and bottle with the North Star, a symbol widely associated with Japanese pioneers in the Sapporo region. (Am. Compl. ¶ 29.) Additionally, Defendant has utilized advertisements that feature "images of a Japanese" thus strongly suggesting, if not outright stating, that Sapporo is imported from Japan. (*Id.* at ¶¶ 29, 33.) In short,

Sapporo has materially misrepresented, "through the marketing and packaging of Sapporo Beer, that Sapporo is brewed in and imported from Japan," when in fact it is not. (*Id.* at ¶ 46.)

Given the extent of Defendant's efforts to inextricably link its beer to its historical brewing location in Japan, it is not at all surprising to learn that experienced industry professionals, including bar owners, restaurateurs, and liquor store proprietors, are confused as to Sapporo's origins and that they often identify Sapporo as being imported from Japan. (*See* Am. Compl. ¶¶ 34–35, 39.) Average consumers, including Plaintiff Antonia Bowring, have likewise fallen prey to Sapporo's deceptive practices. Indeed, "in reliance on Defendant's representations contained on the packaging and elsewhere that [Sapporo] Beer was imported from Japan," Bowring purchased Sapporo "on several occasions" at "multiple locations in restaurants and food stores located in New York City," paying a premium she would otherwise not have paid had she known its true place of origin. (*Id.* at ¶¶ 38–39.) This, of course, is exactly what Sapporo wanted and intended, knowing, as it does, that imported beer is the fastest growing segment of the American beer market[1] and that consumers are willing to pay more for imported beers, believing them to be exotic and/or of superior status or quality. (*Id.* at ¶¶ 27, 37.)

Ultimately, Sapporo engaged in the foregoing deceptive practices "for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and/or pay a premium for Sapporo Beer based on the belief that Sapporo Beer is imported from Japan." (Am. Compl. ¶ 49.) Unfortunately for the consuming public generally, and Bowring in particular, Sapporo's efforts have been successful, and Sapporo "has likely collected millions of dollars from the sale of Sapporo Beer that it would not have otherwise earned" had it been honest about where the beer comes from. (*Id.* at ¶ 38.)

---

[1] Sapporo nearly doubled its market share during the 1990s. (Am. Compl. ¶ 27.)

**LEGAL STANDARD**

Defendant asks the Court to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mem. 9–10.) "The purpose of a Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Global Network Communs., Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). To survive a Rule 12(b)(6) motion to dismiss, the complaint must include factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("*Twombly*"). This, of course, does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

Importantly, "[t]he plausibility standard is not akin to a 'probability requirement,'" but instead merely "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The task of determining facial plausibility is a "context-specific" one "that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("*Iqbal*"). That experience and common sense, however, should be informed by the following well-settled principles: (1) "[m]otions to dismiss are generally viewed with disfavor,"[2] and it is therefore a "rare situation in which granting a motion to dismiss is appropriate"[3]; (2) the plaintiff's claims must be "construed liberally"[4]; (3) "[i]n assessing plausibility on a Rule 12(b)(6)

---

[2] *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 178 (S.D.N.Y. 2010).

[3] *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008); *see also Streit v. Bushnell*, 424 F. Supp. 2d 633, 639 (S.D.N.Y. 2006) (holding that dismissal under Rule 12(b)(6) is not appropriate "except in very rare cases"); *Barapind v. Reno*, 72 F. Supp. 1132, 1141 (E.D. Cal. 1999) (explaining that "[a] motion to dismiss for failure to state a claim under [Rule] 12(b)(6) is disfavored and rarely granted").

[4] *Hitchins v. NYC Dep't of Educ.*, No. 11-CV-4180 RRM RML, 2013 WL 1290981, at *3 (E.D.N.Y. Mar. 28, 2013).

motion to dismiss, a court must 'assume [the] veracity' of all well-pleaded factual allegations contained in the complaint,"[5] and must "'draw all reasonable inferences in favor of the non-moving party;'"[6] and (4) "[a] complaint may not be dismissed pursuant to Rule 12(b)(6) unless it appears **beyond doubt**, even when the complaint is liberally construed, that 'the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[7]

In recognition of the foregoing principles, the New York courts have held that a "complaint may survive a motion to dismiss even where 'it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely.'" *Holmes*, 745 F. Supp. 2d at 193 (quoting *Twombly*, 550 U.S. at 556). This is so because the court's function at the motion to dismiss stage of the litigation is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). Stated another way, the issue here "is not whether a plaintiff will ultimately prevail," but simply whether he "is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also S. Pac. Shipping Co. Inc. v. Redi-Fresh Produce Inc.*, No. 14 CIV. 4157 LAK AJP, 2014 WL 6968039, at *6 (S.D.N.Y. Dec. 9, 2014) (explaining that "[e]ven after *Twombly* and *Iqbal*, the Court's role in deciding a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof'").

---

[5] *Curtis & Assoc. v. Law Offices of David M. Bushman*, 758 F. Supp. 2d 153, 166 (E.D.N.Y. 2010).

[6] *Holmes v. Air Line Pilots Ass'n*, 745 F. Supp. 2d 176, 193 (E.D.N.Y. 2010).

[7] *Global Network Communs., Inc.*, 458 F.3d at 154 (emphasis added).

**LEGAL ARGUMENT**

I.    **PLAINTIFF SUFFICIENTLY ALLEGES ACTIONABLE MISREPRESENTATIONS.**

    A.    **The complaint sufficiently alleges violation of the New York's consumer protection law, New York General Business Law sections 349 and 350.**

In her Amended Complaint, Bowring asserts, among other claims, violations of New York General Business Law sections 349 and 350 (Am. Compl. ¶¶ 50–71), which prohibit, respectively, the use of "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]," N.Y. GEN. BUS. LAW. § 349, and "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]," N.Y. GEN. BUS. LAW. § 350. In considering Sapporo's instant motion, it is important to recall that "General Business Law § 349 is a broad, remedial statute," which is "directed towards giving consumers a powerful remedy." *Oxman v. Amoroso*, 659 N.Y.S.2d 963, 968 (City Ct. 1997). To prevail on her claims under section 349, Bowring needs only provide "proof of a deceptive practice" and "not proof that a statement was false." *Boule v. Hutton*, 328 F.3d 84, 86 (2d Cir. 2003); *see also People ex rel. Spitzer v. Gen. Elec. Co.*, 302 A.D.2d 314, 315 (N.Y. App. Div. 2003) (explaining that "literal truth is not an availing defense" if the representation has the "capacity. . . to mislead even reasonable consumers acting reasonably under the circumstances"). Additionally, "[t]here is no requirement under General Business Law § 349 that plaintiff prove that defendant's practices or acts were intentional, fraudulent or even reckless." *Oxman*, 659 N.Y.S.2d at 968. "Nor does plaintiff have to prove reliance upon defendant's deceptive practices." *Id.*

New York General Business Law section 350 is similarly geared toward protecting the consuming public and, like section 349, is founded on the overarching belief that "'[c]onsumers have the right to an honest market place where trust prevails between buyer and seller.'" *Oswego*

9

*Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744, (N.Y. 1995) (quoting Governor's Memorandum approving New York's "Consumer Protection from Deceptive Acts and Practices" law, of which New York General Business Law sections 349 and 350 are a part). Therefore, courts have traditionally taken "'an expansive view' in determining whether false advertising has occurred." *McDonald v. North Shore Yacht Sales, Inc.*, 513 N.Y.S.2d 590, 593 (Sup. Ct. 1987). To establish a cause of action under section 350, a plaintiff is "only required to demonstrate that the advertisement was misleading in a material respect and he was injured, while an injured person has been defined as one who was misled or deceived by such an advertisement." *Maurizio v. Goldsmith*, 230 F.3d 518, 522 (2d Cir. 2000). As with claims under section 349, "intention to deceive need not be shown." *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 655 (S.D.N.Y. 1983).

**B.    The complaint is replete with allegations of representations and omissions by Sapporo that have the capacity to deceive reasonable consumers.**

As Defendant acknowledges in its brief, Bowring asserts generally that she and other consumers have been misled into believing the beer Sapporo sold in the United States is brewed in, and imported from, Japan. (*E.g.*, Mem. 1.) Despite this, Defendant asks the court to ignore Ms. Bowring's experience and contends Bowring's claims should be dismissed because she has failed to show Defendant has made any statement that is likely to deceive a reasonable consumer. (*See id.* at 10–20.)

In considering Defendant's contention, three points bear mentioning at the outset. First, "[w]hether a practice is deceptive, fraudulent, or unfair ***is generally a question of fact*** which requires 'consideration and weighing of evidence from both sides.'" *Williams*, 552 F.3d at 938–39 (emphasis added). Second, "[d]eceptive acts and practices and false advertising may be established by one's ***capacity*** to deceive or mislead." *Vallery v. Bermuda Star Line, Inc.*, 532 N.Y.S.2d 965,

967 (Civ. Ct. 1988) (emphasis added); *see also People v. Coalition Against Breast Cancer, Inc.*, 975 N.Y.S.2d 712 (Sup. Ct. 2013) (holding that an "[t]he alleged deceptive statement or material must be viewed based upon its capacity, tendency or effect in deceiving or misleading consumers"). And third:

> "If an advertisement is designed to impress . . . customers, . . . the reaction of [that] groups [*sic*] will be determinative." A court may, of course, construe and parse the language of the advertisement. It may have personal reactions as to the defensibility or indefensibility of the deliberately manipulated words. It may conclude that the language is far from candid and would never pass muster under tests otherwise applied . . . but the court's reaction is at best not determinative and at worst irrelevant. ***The question in such cases is - what does the person to whom the advertisement is addressed find to be the message.***

*Am. Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160, 165–66 (2d Cir. 1978) (citation omitted).

Bowring's Amended Complaint is replete with factual allegations of deceptive acts and practices Defendant has perpetrated that are "likely to mislead a reasonable consumer acting reasonably under the circumstances"[8] into believing Sapporo beer is a Japanese import. Indeed, as set forth above, since shifting the production of the product from Sapporo, Japan, to the United States and Canada after nearly a century of being brewed in Japan, Defendant has employed a marketing, advertising, and labeling strategy designed to do just that. Specifically:

- Defendant named its product after one of Japan's oldest and most recognizable cities.

- Defendant admittedly "honors its Japanese heritage throughout its marketing and advertising." (Mem. 3.)

- Defendant aggressively touts its beer as being "the original Japanese beer," as being "the oldest brand of beer in Japan," and as "stand[ing] alone as the #1 selling Asian Beer in the United States." (*See* Am. Compl. ¶¶ 32–33.)

---

[8] *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744.

- Defendant's imported beers prominently feature the word "IMPORTED" underneath the word "SAPPORO," front and center on the labeling, while any information as to the beer's true origin is hidden in small print, often on the side or back packaging. (Am. Compl. ¶ 29; *e.g.*, Exs. 1–2, Decl. Kratenstein, ECF Nos. 24-1, 24-2 (imported beer can labels); Ex. 11, Decl. Kratenstein, ECF No. 24-11 (domestic beer can label).)

- Defendant likewise hides information from consumers as to the true origin of the beers it brews domestically by using disclaimers in small font, often on the back or side of the products' labels. (*See* Mem. 13; *e.g.*, Ex. 11, Decl. Kratenstein, ECF No. 24-11.)

- Defendant makes liberal use of Japanese emblems and imagery, having emblazoned each can and bottle with the North Star, a symbol widely associated with Japanese pioneers in the Sapporo region. (Am. Compl. ¶ 29.)
- Defendant has utilized advertisements that feature "images of a Japanese landscape" thus strongly suggesting, if not outright stating, that Sapporo is imported from Japan. (*Id.* at ¶¶ 29, 33.)

These factual allegations are more than sufficient to support Plaintiff's claims.

**C.     Defendant's packaging and advertising have the capacity to deceive reasonable consumers, and its disclosures relative to brewing location, set forth in a small print disclaimer, are not sufficient to overcome its prominent front label misrepresentations and other deceptive marketing.**

Defendant's claim that the above-cited representations are incapable of misleading a reasonable consumer is factually unsound and legally untenable. (*See* Mem. 10–20.) As an initial matter, its assertion is strongly belied, if not conclusively disproven, by the fact that experienced industry professionals, including bar owners, restaurateurs, and liquor store proprietors, believe that Sapporo is a Japanese import, and identify it as such on their menus and in their stores.[9] (*See*

---

[9] Defendant argues statements by third parties are not actionable. (*See* Mem. 20–22.) However, "under New York law, a claim for fraud may lie even when a plaintiff does not directly rely on a fraudulent representation made by the defendant if (1) the plaintiff received the information from someone who had received it from the defendant, and (2) the defendant intended the misrepresentation to be conveyed to him." *Turtur v. Rothschild Registry Int'l*, 26 F.3d 304, 310 (2d Cir. 1994). Importantly, the plaintiff "need not demonstrate that the third party repeated a defendant's misrepresentations verbatim," *Municipality of Bremanger v. Citigroup Glob. Markets Inc.*, No. 09 CIV. 7058 VM, 2013 WL 1294615, at *14 (S.D.N.Y. Mar. 28, 2013), and allegations of agency are "not necessary" as long as the defendant intends its representations to be communicated to consumers to induce them to purchase its products, *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 773 (S.D.N.Y. 2011). While Sapporo has denied that it directed

Am. Compl. ¶¶ 34–35, 39.) If savvy business people are confused as to Sapporo's true place of origin, it follows as matter of simple logic that the average consumer may likewise be misled. At the very least, Bowring has pled facts which, if accepted as true, are sufficient to establish the existence of a fact question as to whether Sapporo's foregoing representations and omissions have the "capacity, tendency or effect" of deceiving or misleading consumers, thereby raising her "right to relief above the speculative level," *Twombly*, 550 U.S. at 556, and precluding dismissal under Rule 12(b)(6).

The legal fallacy of Defendant's argument is confirmed by the denials of courts in this District of similar motions to dismiss in cases with operative facts that are substantively indistinguishable from those presented here. Illustrative of such cases is *Ackerman v. Coca-Cola Co.*, which likewise involved claims of deceptive acts or practices in violation of various state consumer protection statutes, including New York General Business Law sections 349 and 350. *See generally Ackerman*, 2010 WL 2925955.

In *Ackerman*, the plaintiffs took issue with Coca-Cola's marketing and labeling of its "vitaminwater" product, alleging, in relevant part, that it was misleading because such marketing "bombard[s] consumers with a message of purported benefits, and draw[s] consumer attention away from the significant amount of sugar in the product." *Id.* at *6. As examples of Coca-Cola's misleading representations, the plaintiffs cited: its description of the product as a "nutrient-enhanced water beverage"; its use of flavor-names like "rescue" and "defense"; its use of the statement "vitamins + water = what's in your hand" on advertising materials; its claim that the product had been "specially formulated" to achieve certain health effects; and the fact that the

---

merchants to identify its beer as a Japanese import, the contrary conclusion is equally plausible, especially at this stage of the litigation where no discovery has been had and where the Court should accept Bowring's factual allegations as true and draw from them all reasonable inferences.

product itself was named "vitaminwater." *Id*. at *5.

Coca-Cola filed a motion to dismiss, arguing, in relevant part, that no reasonable consumer could have been misled because the U.S. Food and Drug Administration ("FDA") mandated "label on each bottle bears the true facts about the amount of sugar per serving." *Id.* at *16. That argument is functionally equivalent to Defendant's argument here in which it contends that "[a]s required by at least four federal regulations governing the labeling of the brewing location of beer, Sapporo has accurately labeled its beer as either: (i) brewed in Wisconsin or (ii) brewed in and imported from Canada." (Mem. 1.)

The court denied Coca-Cola's motion with respect to the plaintiffs' claims under New York General Business Law sections 349 and 350, noting first that it was required to consider "the marketing of vitaminwater as a whole," and going on to explain that said marketing and labeling was "potentially misleading" because "the collective effect of the challenged statements was to mislead a reasonable consumer into believing that vitaminwater is either composed solely of vitamins and water, or that it is a beneficial source of nutrients rather than a 'food of little or no nutritional value [which has been fortified] for the sole purpose of claiming or implying that it is 'healthy.'" *Ackerman*, 2010 WL 2925955, at *15; *see also Penrod Ricard USA, LLC v. Bacardi U.S.A, Inc.*, 653 F.3d 241, 250 (4th Cir. 2011) (explaining that "[c]hallenged statements are not to be read in isolation, but must be perused as the average reader would against the whole apparent scope and intent of the writing").

Next, the court rejected Coca-Cola's "truth in labeling" defense, explaining without equivocation that "[t]he fact that the actual sugar content of vitaminwater was accurately stated in an FDA-mandated label in the product *does not eliminate the possibility that reasonable consumers may be misled*." *Ackerman*, 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010)

(emphasis added); *see also Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 NGG RML, 2014 WL 4773991, at *8 (E.D.N.Y. Sept. 24, 2014) (holding that "the mere presence of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations on a product or advertisement"); *People ex rel. Spitzer*, 302 A.D.2d at 315 (holding that "literal truth is not an availing defense" if a representation has the "capacity. . . to mislead even reasonable consumers acting reasonably under the circumstances").

Drawing guidance from the U.S. Court of Appeals for the Ninth Circuit's well-reasoned (and oft-cited) decision in *Williams v. Gerber Products Co.*, the court in *Ackerman* went on to explain that:

> Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Ackerman*, 2010 WL 2925955, at *16 (quoting *Williams*, 552 F.3d at 939–40).

The court concluded that the foregoing reasoning applied with equal force in the case before it and held that:

> [T]he presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by vitaminwater's labeling and marketing. Moreover, even reasonable consumers may not read the nutritional label prior to every purchase of a new product.

*Id.*

*Marty v. Anheuser-Busch Cos., LLC*, which arose out of a dispute over the representations regarding the origin of Beck's beer is also on point. *Marty*, 43 F. Supp. 3d at 1336. Prior to 2012,

Beck's had been brewed in Germany, where it originated in 1873. *Id*. In 2014, consumers from Florida, New York, and California filed a putative class action against Anheuser-Busch Cos., LLC ("AB"), alleging its misrepresentations as to Beck's origins caused them to believe they were "purchasing German beer, imported from Germany, brewed using German requirements and with German ingredients, when, in fact, they [were] purchasing beer brewed in St. Louis, Missouri . . . with ingredients from the United States." *Id*.

AB filed a Rule 12(b)(6) motion to dismiss arguing, as Defendant does here, that its packaging was not misleading because all cans, bottles, and cartons of Beck's included a disclosure stating that Beck's was brewed domestically. *Marty*, 43 F. Supp. 3d at 1340. Given that fact, AB argued the plaintiffs could not have been misled with respect to Beck's status as a domestic beer and that their claims were based entirely on their "own failure to read the actual representations regarding production location that are contained on Beck's labeling and packaging." *Id*.

The court rejected AB's argument and ultimately denied its motion, explaining, in relevant part, that AB's disclaimer on its bottles was "difficult to read" and that, in some cases, was located on the bottom of its cartons. *Marty*, 43 F. Supp. 3d at 1341. The court concluded the presence of the disclaimer was not sufficient to justify dismissal as a matter of law, explaining that "[a] reasonable consumer may not necessarily look at the underside of a carton in deciding whether to purchase a product." *Id.*

In this case, as in those cited above, the "collective effect" of Defendant's marketing and labeling, when considered as a whole, is to mislead reasonable consumers into believing Sapporo is brewed in, and imported from, Japan. Indeed, the name Sapporo itself is intended to create an indelible bond in the minds of consumers between Defendant's beers and Japan, including but not limited to the city of Sapporo located in Japan. And Defendant has gone to great lengths to affirm

this associational bond by aggressively advertising itself: as "the original Japanese beer"; as "the oldest brand of beer in Japan"; and as "stand[ing] alone as the #1 selling Asian Beer in the United States." (*See* Am. Compl. ¶¶ 32–33.) In addition to the name itself, Defendant has also made extensive use of Japanese emblems and imagery in its packaging and marketing, having emblazoned its beer cans and bottles with the Japanese North Star (a symbol widely associated with Japanese pioneers in the Sapporo region). (*Id.* at ¶¶ 29, 33.)

Given the foregoing facts, which the Court must accept as true on this motion, it is evident that the purported disclaimers Defendant has included on its cans and bottles concerning the true location of its brewing facilities—having been rendered, as they are, in very small typeface and having been often relegated to the back or side of the cans and bottles[10]—"do[ ] not eliminate the possibility that reasonable consumers may be misled." *Ackerman*, 2010 WL 2925955, at *16. Ultimately, because courts in this District have recognized that "'[r]easonable consumers should [not] be expected to look beyond misleading representations on the front of the [can] to discover the truth from [a] list in small print on the side of the [can],'"[11] Defendant's reliance on such disclosures is misplaced, and its motion should be denied.

## II.   NO SAFE HARBOR PROTECTS SAPPORO BEER'S FALSE AND MISLEADING LABELING AND ADVERTISING.

Defendant argues the safe harbor provisions in New York General Business Law sections 349(d) and 350-d protect it from Plaintiff's claims under sections 349 and 350, respectively, because the U.S. Alcohol and Tobacco Tax and Trade Bureau ("TTB") conducted a pre-market review of the labels of the beer products at issue and determined the labels comply with several

---

[10] (*See* Am. Compl. ¶ 29; *e.g.*, Exs. 1–2, Decl. Kratenstein, ECF Nos. 24-1, 24-2 (imported beer can labels); Ex. 11, Decl. Kratenstein, ECF No. 24-11 (domestic beer can label).)

[11] *Ackerman*, 2010 WL 2925955, at *16 (quoting *Williams*, 552 F.3d at 939–40).

federal regulations. (Mem. 1–2, 22–26.). Defendant is wrong. It has not carried its burden to show that the safe harbors apply. [12] Defendant's arguments miss the mark because the labeling representations Plaintiff challenges either violate the regulations Defendant cites (in the case, for example, of the naming of the beer after a Japanese city, which violates 27 C.F.R. § 7.24(f)) or do not fall within their purview (in the case of representations such as the North Star), and there are no facts before the Court indicating the TTB investigated or approved any of the specific labeling representations at issue as truthful and non-misleading, let alone the other non-label marketing.

New York's safe harbor provisions apply only where federal law or a federal agency (or in the case of section 350-d, a state agency) "has *explicitly endorsed the particular facet* of the labeling which is claimed to be inadequate." *See Frito-Lay*, 2013 WL 4647512, at *22 (emphasis added). "Compliance with regulations does not immunize misconduct outside the regulatory scope." *Id.*; *accord Sclafani v. Barilla Am., Inc.*, 796 N.Y.S.2d 548 (2005); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 133 F. Supp. 2d 162, 175 (E.D.N.Y. 2001). Furthermore, "making deceptive statements cannot be considered *compliance* with federal rules, regulations, and statutes, as required by [section] 349(d)." *People ex rel. Spitzer v. Gen. Elec. Co.*, 756 N.Y.S.2d 520, 524 (App. Div. 2003).

*Singleton v. Fifth Generation, Inc.*, No. 515CV474BKSTWD, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016), is on point. In *Singleton*, the plaintiff alleged the defendant violated New York General Business Law section 349 by falsely and misleadingly labeling its vodka product as "Handmade" and "Crafted in an Old Fashioned Pot Still." *Singleton*, 2016 WL 406295, at *1. The defendant argued section 349(d) barred the plaintiff's claims because the TTB had approved the

---

[12] *Marty*, 43 F. Supp. 3d at 1343 ("The defendant bears the burden of establishing the applicability of the safe harbor provisions.").

labels and issued Certificates of Label Approval ("COLAs"), meaning the TTB had determined the representations at issue were neither false nor misleading. *Id.* at *3–4, *5. The court disagreed, stating that section 349(d) "has been applied where ***a federal law or regulation specifically authorizes the challenged conduct, or a federal agency specifically approves the challenged conduct***." *Id.* at *4–7 (emphasis added). Reviewing the COLAs at bar, the court stated it was unclear "whether the TTB [had] determined that each representation on [the labels at issue complied] with the relevant regulations," since "[t]he record [did] not reflect whether the TTB investigated or ruled upon the representations that [the] vodka [was] 'handmade' and 'crafted in an old-fashioned pot still,'" and the COLAs "filled out by Defendant and certified by Defendant to be true and correct [were] simply marked approved by the TTB." *Id.* at *8. "In addition, there [was] no federal regulation for the TTB to interpret . . . that defines the terms 'handmade' and 'crafted in an old-fashioned pot still.'" *Id.*

Similarly, in *Hofmann v. Fifth Generation, Inc.*, No. 14-CV-2569 JM JLB, 2015 WL 5440330 (S.D. Cal. Mar. 18, 2015), the court declined to apply California consumer protection law's safe harbor (substantially similar to that of New York) because there were no facts properly before it indicating the TTB "specifically investigated and approved of" the representation at issue, and due to the absence of guidance from the TTB concerning the meaning of the representation, it was not clear to the court that the representation was "necessarily within the TTB's regulatory purview." *Hofmann*, 2015 WL 5440330, at *7.[13]

---

[13] *See also Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1042 (S.D. Cal. 2015) (finding that "the TTB certificates [approving whiskey label] don't reveal whether the TTB specifically investigated and approved the veracity of Jim Beam's use of the term 'handcrafted'"); *Aliano v. Louisville Distilling Co., LLC*, 115 F. Supp. 3d 921, 933 (N.D. Ill. 2015) ("While the label itself was approved by TTB, it is not clear what statements on it were actually reviewed and approved.").

Here, Plaintiff's New York consumer protection claims for false and misleading labeling and advertising align with the prohibition on false and misleading labeling in 27 U.S.C. § 205(e) and 27 C.F.R. § 7.29(a)(1) and the prohibition on false and misleading advertising in § 205(f) and 27 C.F.R. § 7.54(a)(1). Moreover, as in *Singleton* and *Hofmann*, there are no facts before the Court indicating the TTB specifically investigated and approved Defendant's use of the name of a major Japanese city ("SAPPORO"); the image of the North Star; or the word "IMPORTED" (or the other challenged advertising, such as the representation that Sapporo is "Japan's Oldest Brand") (*see* Am. Compl. ¶¶ 1, 29–35, 39), and Defendant has pointed to no TTB regulation or guidance regarding the meaning of these representations, other than 27 C.F.R. § 7.24(f), which the name "SAPPORO" violates. *See Singleton*, 2016 WL 406295, at *7–8; *Hofmann*, 2015 WL 5440330, at *7; *see also Marty*, 43 F. Supp. 3d at 1345 (holding that plaintiffs' claims did not trigger New York General Business Law section 349(d) and other safe harbors because the claims were "not based on the labels approved by the TTB, but rather on the representations contained on the cartons of [the beer at issue] and the defendant's other representations and omissions").

Indeed, the legislative history of 27 U.S.C. § 205(f) confirms that the brewer remains primarily responsible for complying with Federal regulations concerning advertising, regardless of TTB approval. Specifically, in discussing whether advertisers would have to submit individual advertisements for Federal review, the legislative history states that "[t]he undoubted purposes of [the Federal Alcohol Administration Act, 27 U.S.C. § 201 *et seq.* ('FAA')] is to throw the primary responsibility on the brewer, the distiller, the rectifier, and the blender of complying with the regulations of the Administration as to the type of advertising that should be published."[14]

---

[14] FED. ALCOHOL CONTROL ADMIN., *Legislative History of the Federal Alcohol Administration Act (Public No. 401, Seventy-Fourth Congress) (H.R. 8870)*, at 77–79 (1935), *available at* https://archive.org/details/legislativehisto00unit. Plaintiff does not contest that, in enacting 27 U.S.C. § 205(e) and (f), Congress laid down "general principles" governing the labeling and

Because no federal law, regulation, or agency approval protects any labeling or advertising representation that Plaintiff challenges, the safe harbors in New York General Business Law sections 349(d) and 350-d do not bar Plaintiff's claims.

Defendant's arguments to the contrary are meritless.

As a preliminary matter, Defendant quotes from the TTB's website in support of an argument concerning the scope of the TTB's regulatory authority. (Mem. 23–24.) However, the TTB's statements on its website do not have the force of federal law and, consequently, cannot alone trigger the protection of New York's safe harbor provisions. *See Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 339–42 (3d Cir. 2009) (concluding that federal agency's policy statement was not entitled to "preemptive effect"); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1073–76 (E.D. Cal. 2010) (concluding federal agency's policy statement could not trigger California consumer protection law's safe harbor).

Defendant's argument the TTB conducted a review of Sapporo beer's labeling and issued COLAs misses the mark for similar reasons. (*See* Mem. 26–30.) The COLAs Defendant received from the TTB do not have the force of law and, as a result, do not trigger the protection of the safe harbors. The TTB's COLA application expressly states that one of the conditions of the certificate is: "***This certificate does not relieve you from liability for violations of the Federal Alcohol Administration Act . . . or related regulations and rulings.***" (Decl. Granade, Ex. 1, at 2 (emphasis added).)[15] As the court in *Singleton* stated, "the COLA application form states that the issuance of a certificate does not relieve Defendant from liability for violations of the [FAA], which itself

---

advertising of malt beverages for the U.S. Department of the Treasury to follow when promulgating regulations governing the same. *See id.* at 65–66, 77. (*See* Mem. 23.)

[15] The Court should "take[] judicial notice of the complete TTB Form 5100.31 as a publicly available document that is excerpted in the COLAs and referenced in the relevant regulations." *Singleton*, 2016 WL 406295, at *14.

prohibits false and misleading labeling, 27 U.S.C.A. § 205(e), suggesting that TTB approval is not intended to carry pre-emptive weight." *Singleton*, 2016 WL 406295, at *8. Nor is the TTB COLA process akin to label approval processes in the highly regulated tobacco, food, and drug industries. *Hofmann*, 2015 WL 5440330, at *7 (stating that defendant "[did] not cite any authority to show that [California's] safe harbor extended to informal TTB action of the type at issue"); *cf. Frito-Lay*, 2013 WL 4647512, at *22 (stating that it was "not clear" that FDA guidance concerning "natural" labeling was a "rule or regulation" sufficient to trigger New York's safe harbors).

Additionally, the fact that the TTB was able to determine the brewing location of each of the Sapporo beers on reviewing the entirety of the labeling with the specific purpose of determining the brewing location (*see* Mem. 26–28) does not indicate the TTB determined that, for example, the image of the North Star and the word "imported" are not false and misleading from the vantage point of the reasonable consumer viewing the product labeling under ordinary purchasing conditions. *See Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 745 (stating that under New York consumer protection law, the plaintiff must show the defendant's representations are "likely to mislead a reasonable consumer acting reasonably under the circumstances"). The circumstances of a consumer purchasing Sapporo beer in, for example, a retail store based on the front labeling of the beer are not analogous to the circumstances of the TTB when filling out the "OR" field of its COLA application.[16]

Defendant cites a handful of Federal regulations governing the labeling of malt beverages which, according to Defendant, trigger the New York safe harbors. (Mem. 24–26, 29.) Defendant

---

[16] Defendant's discussion of *Singleton* is misguided. (*See* Mem. 28–29.) As stated above, Defendant has pointed to no regulation or agency action indicating the TTB investigated or approved any of the representations at issue, including the word "imported" and the image of the North Star; Bowring's case is akin to *Singleton*. *See Singleton*, 2016 WL 406295, at *3–8.

is wrong. None of the labeling regulations Defendant cites triggers the safe harbors in this case. Furthermore, none of the regulations even addresses any of the non-label marketing claims that Plaintiff challenges, such as "Japan's Oldest Brand" and "Sapporo is the original Japanese beer" (Am. Compl. ¶¶ 1, 32), since the regulations only govern labeling.

Moreover, Defendant concedes that:

> *in order to minimize consumer confusion, TTB [] requires that any beer label referencing a geographic term that is different from the actual production location of the beer must also include "in direct conjunction...the word 'type' or the word 'American', or some other statement indicating the true place of production in lettering substantially as conspicuous as such name."*

(Mem. 25 (emphasis added) (quoting 27 C.F.R. § 7.24(f)).) ***Defendant simply does not comply with this TTB regulation meant to combat consumer confusion, as the name of the product—a Japanese city—has no such qualifiers or disclaimers.*** This fact alone defeats Defendant's safe harbor arguments.

Defendant argues that the TTB mandates that imported beer labels include the name and address of the importer (Mem. 25 (citing 27 C.F.R. § 7.22(b)(1) and 27 C.F.R. § 7.25(b))) and that domestic beer labels include the name of the bottler or packer and the place where bottled or packed or the bottler's or packer's principal place of business (*id.* (citing § 7.25(a))). Plaintiff does not challenge Defendant's compliance with these regulations, however. Instead, the labeling representations Plaintiff challenges include Defendant's use of the name of a Japanese city, the North Star, and the word "imported." (Am. Compl. ¶ 29.) Consequently, § 7.22(b)(1), § 7.25(b), and § 7.25(a) do not trigger the protection of the New York consumer protection laws' safe harbors.[17]

_____

[17] The statements that § 7.22(b)(1), § 7.25(b), and § 7.25(a) require, viewed in the full context of Sapporo beer's labeling, do not apprise reasonable consumers of the location where Defendant brewed the beer, are in small type, and, in many cases, are on the back of the product labels. (*See*

Citing the TTB's website[18] and 19 C.F.R. § 134.11, Defendant argues Federal regulation requires imported beer labels to state where the beer is brewed, and it argues the TTB reviews every proposed label to ensure that any imported beer identifies the country of origin. (Mem. 25–26.) However, § 134.11 does not govern any of the representations at issue. *See* § 134.11 (requiring marking of "the English name of the country of origin of the article"). Consequently, Defendant's compliance with § 134.11 does not trigger the New York safe harbors to bar Plaintiff's claims.

Finally, the cases upon which Defendant relies are distinguishable.

Defendant's reliance on *Cruz v. Anheuser-Busch, LLC*, No. CV 14-09670 AB ASX, 2015 WL 3561536 (C.D. Cal. June 3, 2015), is misplaced because the circumstances in *Cruz* are materially different from the case at bar. (*See* Mem. 28–29, 30.) The plaintiffs in *Cruz* alleged the defendant's use of the term "light" on the malt beverage products at issue was misleading because it left an impression that the products were low in calories and carbohydrates when, in fact, they were not. *Cruz*, 2015 WL 3561536, at *1. The TTB had issued guidance that provided alcoholic industry members with guidelines on how to ensure labels advertising calorie and carbohydrate content would not mislead the public, including guidelines for use of the word "light," and the TTB had issued COLAs to the defendant in light of the guidance. *Id.* at *4–5. Here, by contrast, Defendant points to no Federal statute, regulation, guidance, or COLA that specifically concerns its use of the representations at issue, other than 27 C.F.R. § 7.24(f), which Sapporo beer's labeling violates. For this reason, *Cruz* is inapposite.

---

Exs. 1–5, 8–14, 16–17, Decl. Kratenstein, ECF Nos. 24-1 – 24-5, 24-8 – 24-14, 24-16 – 24-17.) (Plaintiff bring no claims concerning the labeling of kegs of Sapporo beer.) Consequently, they are insufficient to remedy the prominent front label deception that the name "SAPPORO," the North Star and, in appropriate cases, the word "IMPORTED" create, in conjunction with the non-label marketing at issue. (*See supra* Part I.)

[18] As stated above, statements on the TTB's website do not have the force of law. (*See supra* p. 21 (citing *Holk*, 575 F.3d at 339–42 and *Von Koenig*, 713 F. Supp. 2d at 1073–76).)

Defendant's citation to *Parent v. MillerCoors LLC*, No. 3:15-CV-1204-GPC-WVG, 2015 WL 6455752 (S.D. Cal. Oct. 26, 2015), is off point for similar reasons. (*See* Mem. 30.) In *Parent*, regulatory provisions specifically authorized the conduct at issue, *i.e.*, the use of a trade name ("Blue Moon Brewing Co.") to identify the manufacturer rather than manufacturer's actual name ("MillerCoors LLC"). *Parent*, 2015 WL 6455752, at *1, 5–6.[19]

## III.   THE AMENDED COMPLAINT ALLEGES A SPECIAL RELATIONSHIP SUFFICIENT TO SUPPORT A CLAIM FOR NEGLIGENT MISREPRESENTATION.

Defendant argues that Plaintiff's negligent misrepresentation claim fails because Plaintiff and Defendant have no "special relationship." (Mem. 30–31.) However, whether a "special relationship" exists is generally a factual inquiry, which is not appropriate for resolution on a motion to dismiss. *Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104 (2d Cir. 2001); *Kimmel v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996).

---

[19] Defendant cites *Porr v. NYNEX Corp.*, 660 N.Y.S.2d 440 (1997), the U.S. Court of Appeals for the Second Circuit's non-precedential opinion in *Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App'x 622 (2d Cir. 2012) ("*K.C. Okoli*") (summary order), *American Home Products Corp. v. Johnson & Johnson*, 672 F. Supp. 135 (S.D.N.Y. 1987), and *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296 (S.D.N.Y. 1998), but those decisions are all off point because in each, a specific Federal law or regulation governed the conduct the plaintiff challenged. (*See* Mem. 22–23.) *See K.C. Okoli*, 481 F. App'x at 624, 626 (safe harbor barred plaintiff's claim that defendant bank failed to make funds from a deposited check available for withdrawal as soon as the funds had been collected from the check drawer because bank "made the proceeds of its check available within the seven-day time frame established by [federal law]"); *Cytyc Corp.*, 12 F. Supp. 2d at 301 (while challenged statements "[did] not correspond precisely" to statements the FDA had approved, they "[were] similar enough to the approved statements for the Court to conclude, as a matter of law, that they [were] neither false nor misleading"); *Am. Home Prod. Corp.*, 672 F. Supp. at 136, 141 (safe harbor barred claim that over-the-counter internal aspirin products failed to warn that children with viral diseases who took such products incurred a significant risk of contracting Reye Syndrome because FDA had "expressly found that there was a need for uniformity in [Reye Syndrome] warnings on the labels of aspirin-containing products and expressly preempted all conflicting regulations" and had delineated the precise terms of such warnings); *Porr*, 660 N.Y.S.2d at 448 (Federal Communications Commission had "expressly declared" that the challenged conduct, "telephone billing on a per-minute rather than a per-second basis," was "consistent with its guidelines").

And, in the context of a claim for negligent misrepresentation, "it is enough that Plaintiffs allege that 'defendants sought to induce plaintiffs into a business transaction by making certain statements or providing specific information with the intent that plaintiffs rely on those statements or information.'" *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 416 (S.D.N.Y. 2010).

Here, Plaintiff alleges Defendant marketed and represented its beer as being imported from Japan. (Am. Compl. ¶¶ 1, 29, 46.) She further alleges Defendant represented its beer as such to mislead its customers to believe the beer is imported from Japan, as opposed to being brewed in North America, because that information was material to consumers. (*Id.* at ¶¶ 31, 32, 46, 49, 74.) And, as expected and intended by Defendant, Plaintiff and consumers justifiably relied upon its representations that Sapporo beer is imported from Japan. (*Id.* at ¶ 39, 49, 74, 75.) These facts are sufficient to show that Defendant sought to induce Plaintiff into a business transaction (*i.e.*, purchasing the beer) by making certain statements or providing specific information (*i.e.*, that the beer is imported from Japan) with the intent that Plaintiff rely on the statements or information.

Furthermore, Defendant appeared to hold unique or special expertise on where the beer is brewed. In addition, Defendant was clearly aware that representations on the packaging that led consumers to believe the beer was brewed in Japan would be used by consumers to determine whether to purchase the beer. Defendant made these representations for the purpose of convincing consumers, like Plaintiff, to purchase the beer because, as the Supreme Court of California has recognized in analyzing California consumer protection law, "labels matter." *See Kwikset Corp. v. Superior Court*, 246 P.3d 877, 889 (Cal. 2011). As such, Plaintiff has sufficiently alleged a "special relationship" between Plaintiff and Defendant, by virtue of Defendant's specific statements intended to induce Plaintiff into purchasing the beer, to support a claim for negligent misrepresentation.

## IV.    THE AMENDED COMPLAINT SATISFIES THE HEIGHTENED PLEADING STANDARD OF RULE 9(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

Defendant argues Plaintiff's fraud, negligent misrepresentation, and unjust enrichment claims fail to satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. (Mem. 32–34.) Sapporo is wrong.[20]

Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To satisfy Rule 9(b), Plaintiff's Amended Complaint must: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) ("*Loreley*"); *see also Paulino v. Conopco, Inc.*, No. 14-CV-5145 JG RML, 2015 WL 4895234, at *6 (E.D.N.Y. Aug. 17, 2015) ("To comport with Rule 9(b), a plaintiff must not only give the who, what, and when with regard to an alleged false or misleading statement, but also must 'give particulars as to the respect in which plaintiff contends the statements were fraudulent.'").

"Rule 9(b) requires only that [Plaintiff] plead, with particularity, facts from which it is plausible to infer fraud; it does not require [Plaintiff] to plead facts that make fraud more probable than other explanations." *Loreley*, 797 F.3d at 175. "[T]he primary purpose of Rule 9(b) . . . is to afford defendant[s] fair notice of the plaintiff's claim[s] and the factual ground upon which [they are] based." *Gauquie v. Albany Molecular Research, Inc.*, No. 14CV6637FBSMG, 2016 WL 4007591, at *2 (E.D.N.Y. July 26, 2016); *see also United States ex rel. Forcier v. Computer Scis. Corp.*, No. 12-CV-1750 (DAB), 2016 WL 2605896, at *8 (S.D.N.Y. Apr. 28, 2016) ("The purpose

---

[20] Plaintiff does not contest Defendant's assertion that Rule 9(b) applies to Plaintiff's fraud, negligent misrepresentation, and unjust enrichment claims. (*See* Mem. 32.)

of Rule 9(b)'s specificity requirement is to provide the defendant with fair notice of a plaintiff's claim and adequate information to frame a response.").

Here, Plaintiff has expressly identified the who, what, and when of the fraudulent statements at issue, and she has given particulars as to the respect in which she contends the statements are fraudulent. *Paulino*, 2015 WL 4895234, at *6. (Am. Compl. ¶¶ 44–49.) Specifically, Plaintiff has identified Sapporo as the speaker of the representations. (*E.g.*, *id.* at ¶ 45.) Plaintiff alleges Defendant made, or caused third parties to make,[21] numerous fraudulent statements indicating Sapporo is Japanese in the marketing and advertising of Sapporo's beer, including on the labeling of the beer, on Sapporo's website, and in restaurants (on menus), food markets, and liquor stores. (*Id.* at ¶¶ 1, 29–35, 39.) The marketing representations at issue include but are not limited to: (i) the name of the product itself, which is one of the largest cities in Japan; (ii) the statement that Sapporo is "Japan's Oldest Brand," (iii) statements such as "Sapporo is the original Japanese beer," "Sapporo – the Original Japanese Beer," and "The Original Japanese Beer," (iv) the image of the Japanese North Star, (v) the word "imported" on the labeling of the Sapporo beer that is brewed in Canada, and (vi) television commercials in which "Sapporo alludes to the Beer being imported with images of a Japanese landscape, finishing with the Beer's slogan as 'The Original Japanese Beer.'" (*Id.*) With respect to when Defendant made the challenged representations, Plaintiff alleges Defendant made the statements "continuously at every point of purchase and consumption throughout [the period from April 15, 2010, to the present]." (*Id.* at ¶ 40.A.) Finally, Plaintiff has explained why the statements are fraudulent: the statements indicate to reasonable consumers that Sapporo originates in, and is imported from, Japan, when, in fact,

---

[21] Plaintiff's allegations give rise to the reasonable inference that Sapporo caused restaurants, food markets, and liquor stores to represent that Sapporo beer is Japanese. (*See* Am. Compl. ¶ 34–35.)

Sapporo is brewed in either Wisconsin or Canada. (*Id.* at ¶ 29–38.)

Defendant's reliance on the Second Circuit's non-precedential decision in *DiMuro v. Clinique Labs., LLC*, 572 F. App'x 27 (2d Cir. 2014) (summary order), is misplaced. (*See* Mem. 32–33.) In *DiMuro*, the court held the plaintiffs' allegations failed to satisfy Rule 9(b) because: (i) the seven products at issue had different ingredients and different intended uses, (ii) Clinique made different advertising claims for each product, from a set of 35 claims, and (iii) the plaintiffs failed to specify which of the 35 claims at issue was on any individual product, instead alleging all claims were false because all products, collectively, could not work. *DiMuro*, 572 F. App'x at 30. The lack of clarity as to the alignment between the representations at issue and the products at issue led the Second Circuit to conclude the plaintiffs' complaint "lack[ed] the particularity required to ensure that Clinique received fair notice of Plaintiffs' claims." *Id.* Here, by contrast, the Amended Complaint connects the representations at issue with the products to which they apply (*e.g.*, the Canadian beer is labeled "imported," while the Wisconsin beer is not, and all products at issue bear the name "SAPPORO" and the image of the North Star), such that Defendant is able to respond to Plaintiff's claims. (*See* Am. Compl. ¶¶ 1, 29–35, 39.) Indeed, the 37-page length of Defendant's opening brief demonstrates the Amended Complaint put Sapporo on sufficient notice of Plaintiff's claims to be well able to prepare a defense.[22] (*See generally* Mem.)

---

[22] Defendant cites *Barbara v. MarineMax, Inc.*, No. 12-CV-0368 ARR, 2012 WL 6025604, at *19 (E.D.N.Y. Dec. 4, 2012), but that case is inapposite. (*See* Mem. 34.) In *Barbara*, the only misrepresentation the plaintiffs alleged the defendants made was that the defendants were "acting in good faith and fulfilling their fiduciary duties," but the plaintiffs failed to identify the speaker or when and where the statement was made. *Barbara*, 2012 WL 6025604, at *19. Under these circumstances, the court concluded the plaintiffs failed to satisfy Rule 9(b). *Id.* at *19–20. As set forth above, here, Plaintiff has identified the speaker and when and where the statements at issue were made. (*See supra* pp. 28–29.) Sapporo also cites *Jovel v. i-Health, Inc.*, No. 12-CV-5614 JG, 2013 WL 5437065 (E.D.N.Y. Sept. 27, 2013) (Mem. 32), but *Jovel* does not aid it because in *Jovel*, the court held the pleading satisfied Rule 9(b) because there was "ample particularization" of the plaintiff's allegations. *See Jovel*, 2013 WL 5437065, at *11.

## V.   PLAINTIFF MAY PLEAD UNJUST ENRICHMENT IN THE ALTERNATIVE.

Defendant argues the Court should dismiss Plaintiff's unjust enrichment claim because it is duplicative. (Mem. 34–35.) However, under Federal Rule of Civil Procedure 8(d)(2), "a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." *Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 261 (E.D.N.Y. 2014); FED. R. CIV. P. 8(d)(2); *see also Burton v. Iyogi, Inc.*, No. 13-CV-6926 DAB, 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015) (declining to dismiss New York unjust enrichment claim and stating that "it is well-settled that parties may plead in the alternative"); *Winick Realty Grp. LLC v. Austin & Associates*, 857 N.Y.S.2d 114, 115 (App. Div. 2008) ("Finally, since plaintiff is entitled to plead inconsistent causes of action in the alternative, the quasi-contractual claims are not precluded by the pleading of a cause of action for breach of an oral agreement.").

Here, Plaintiff pleads her unjust enrichment claim in the alternative to her other claims (Am. Compl. p. 19), and questions of fact remain as to all of Plaintiff's claims. *Delgado*, 2014 WL 4773991, at *23 ("Many courts dismissing unjust enrichment claims as duplicative of contract claims have done so on a motion for summary judgment, with the benefit of a full factual record.").

The Court should decline to dismiss Plaintiff's unjust enrichment claim. *Huang*, 13 F. Supp. 3d at 261.

## VI.   PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF.

Defendant argues "there is no threat of future injury to Plaintiff" because she stopped buying Sapporo beer and she "thus lacks standing to seek an injunction." (Mem. 35–36.) Although "[i]t is true that a plaintiff seeking prospective relief must show that he or she is 'likely to suffer future injury' from the defendant's conduct," "courts have consistently held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is

misleading to a reasonable consumer." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) ("*Ackerman II*"). As the court in *Ackerman II* explained, "[t]o hold otherwise would 'effectively bar any consumer who avoids the offending product from seeking injunctive relief.'" *Id.*

As in *Ackerman II*, Defendant's alleged deceptive conduct is ongoing (*see* Am. Compl. ¶ 33), Plaintiff seeks to be relieved from Defendant's misleading and deceptive practices in the future (*id.* at ¶ 54, 59, 66, 70), and the fact that Plaintiff discovered the alleged deception does not make Defendant's advertising or labeling any more accurate or truthful (*id.* at ¶ 39). *Ackerman II*, 2013 WL 7044866, at *15 n.23; *see also, e.g.*, *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *6–7 (N.D. Cal. Dec. 13, 2012) (plaintiff had standing for injunctive relief claim even though he did not intend to purchase the product as advertised); *Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012 WL 5458396, at *3–4 (N.D. Cal. June 14, 2012) (plaintiffs had standing to seek injunctive relief even though they would not purchase the food products again because of their synthetic ingredients). For all of the foregoing reasons, Plaintiff has standing to pursue injunctive relief on behalf of herself and the class.

## VII.   IF THE COURT GRANTS ANY PORTION OF DEFENDANT'S MOTION TO DISMISS, IT SHOULD ALLOW PLAINTIFF LEAVE TO AMEND.

The Federal Rules of Civil Procedure allow for liberal amendment of pleadings. After expiration of the time for amendment as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). The Court, however, "should freely give leave when justice so requires." *Id.*; *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[T]he 'permissive standard' of Rule 15 'is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits.'" *Loreley*, 797 F.3d at 190; *see also Joinnides v. Floral Park-Bellerose Union Sch. Dist.*, No. CV 12-5682 JS AKT, 2015 WL 1476422,

31

at *8 (E.D.N.Y. Mar. 31, 2015) ("Amendments are generally favored because they tend to facilitate a proper decision on the merits."). The party opposing amendment "bears the burden of establishing that the amendment should be denied." *Eliya, Inc. v. Steven Madden, Ltd.*, No. 15CV1272DRHSIL, 2016 WL 1092626, at *2 (E.D.N.Y. Mar. 21, 2016).

Defendant has not carried its burden of establishing that the Court should deny leave to amend. Defendant argues the Court should deny leave to amend because Plaintiff will never be able to amend her pleading to overcome Defendant's arguments concerning the "reasonable consumer" standard and its "safe harbor" arguments. (Mem. 36.) Sapporo is wrong. In the event the Court grants any portion of Defendant's Motion (which it should not), it should deny Defendant's request for dismissal with prejudice.

Plaintiff has not yet had an opportunity to amend her pleading in response to a Court order evaluating the sufficiency of her allegations. As the Second Circuit has observed, "[w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley*, 797 F.3d at 190. Indeed, according to the Second Circuit, the "absence of a definitive ruling" is "critical" in assessing whether Plaintiff has forfeited "the protections afforded by Rule 15." *Id.*

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss in its entirety.

Date: September 8, 2016

Respectfully submitted,

**REESE LLP**

By:  */s/ Michael R. Reese*
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York  10025

- and -

**HALUNEN LAW**
Melissa W. Wolchansky
*wolchansky@halunenlaw.com*
Amy E. Boyle
*boyle@halunenlaw.com*
80 South Eighth Street
Minneapolis, Minnesota  55402

*Counsel for Plaintiff and the Proposed Class*